GREEN ACRES ENTERPRISES,
INC., Respondent,

v.

Francis B. "Chris" FREEMAN,
Jr., Appellant.

No. WD 48081.

Missouri Court of Appeals,
Western District.

March 1, 1994.

Motion for Rehearing and/or Transfer to
Supreme Court Denied May 3, 1994.

Application to Transfer Denied
June 21, 1994.

Lawrence Jay Zimmerman, Kansas City, for appellant.

Gerard Eftink, Kansas City, for respondent.

Before SMART, P.J., and LOWENSTEIN and FENNER, JJ.

FENNER, Judge.

Appellant, Francis B. Freeman, Jr. (Freeman), appeals the judgment of the trial court finding Freeman liable on a promissory note and entering judgment in favor of respondent, Green Acres Enterprises, Inc. (Green

Acres). The trial was by the court without a jury and judgment was entered without findings of fact or conclusions of law.

The record reflects that Green Acres borrowed approximately $418,000 from the First National Bank in Butler, Missouri, and loaned the money to Freeman. In July of 1979, W.K. Jenkins, who was president of Green Acres, met Freeman at the First National Bank in Butler and a promissory note was signed by Freeman and by Jenkins on behalf of Green Acres whereby Freeman promised to pay $418,000 plus interest of 13% and attorney's fees of 10% to Green Acres on demand. The note evidenced a date of July 26, 1979, and Jenkins testified that the note was signed at the First National Bank in Butler, Missouri. The note was signed by Freeman, as president, on behalf of Jenway Investment Corporation (Jenway), and by Freeman individually as his personal obligation. Green Acres also received a mortgage, on land in Louisiana, to secure the note.

The trial court found that the total amount of the note was due in the sum of $418,000 plus interest in the amount of 13% per annum from July 26, 1979, and attorney's fees in the amount of 10%. Judgment was entered in favor of Green Acres and against Freeman in the amount of $2,086,015 plus attorney's fees in the amount of $41,800 with post-judgment interest in the amount of 13%.

In its order, the trial court found that Counts I and II of the petition requested the same relief and entered judgment in favor of Green Acres and against Freeman as to Counts I and II. Count I alleged that Freeman was the principal obligor on the note and Count II alleged in the alternative that Freeman was liable as a guarantor on the note.

■■ In our review of this court tried case the judgment of the trial court is to be affirmed unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Furthermore, where the court has not entered findings of fact or conclusions of law, we review the evidence in the light most favorable to the trial court's judgment, disregarding all evidence to the contrary. *T.B.G. v. C.A.G.*, 772 S.W.2d 653, 654 (Mo. banc 1989); *McMurray v. Director of Revenue*, 800 S.W.2d 820, 821 (Mo.App.1990).

In his first point on appeal, Freeman argues that the trial court erred by finding that he was both a principal obligor and a guarantor on the note because such a finding is contradictory and mutually destructive. In his third point, Freeman argues that the trial court's judgment against him on Count II, as a guarantor of the note, is against the weight of the evidence.

■ On appeal from a bench tried case, the trial court is presumed to have made findings in accordance with the decree entered and judgment will be affirmed under any reasonable theory supported by the evidence, where the parties do not request findings of fact and conclusions of law and none are entered. *Uelk v. Directory Distributing Associates, Inc.*, 803 S.W.2d 632, 634 (Mo. App.1991).

■ Freeman's first point is without merit. Freeman, by counsel, admitted at trial that he was personally obligated on the note and that he did not contest that fact. Having admitted his personal liability, Freeman cannot escape the obligation by arguing that the trial court inconsistently found him to be both the principal obligor and the guarantor on the note.

■■ Unless an instrument specifies otherwise, persons who sign a note as makers as part of the same transaction are jointly and severally liable. *Landmark KCI Bank v. Marshall*, 786 S.W.2d 132, 136 (Mo.App. 1989). In the case at bar, Freeman signed the note individually as a maker with no indication to the contrary in the terms of the note. The note was also signed by Freeman on behalf of Jenway Investment Corporation. Freeman was personally liable as a maker of the note.

By its judgment, the trial court was merely saying that regardless of whether Freeman was considered the principal obligor or the guarantor, he was nonetheless liable under the terms of the note. Such a finding is not

inconsistent, contradictory or mutually destructive. The judgment of the trial court finding Freeman personally liable on the note is supported by the evidence and by Freeman's own admission.

■ However, in regard to Freeman's third point, guarantees are separate contracts, collateral to and independent of any underlying agreement. *McFarland v. O'Gorman,* 814 S.W.2d 692, 694 (Mo.App. 1991). A guarantor's liability arises primarily from the guarantee agreement itself. *Id.*

In the case at bar, there was no agreement for Freeman to act as a guarantor on the note and the evidence does not support such a finding. Freeman was liable as a co-maker, not as a guarantor.

Freeman's first point is denied and his third point is sustained.

■ In his second point, Freeman argues that the trial court erred in finding that stock issued to Green Acres by Jenway did not satisfy the obligation under the note.

The record reflects that 500 shares of Jenway stock were issued to Green Acres. Freeman argues that these shares were issued in satisfaction of the debt on the note. Green Acres argues that the stock was merely collateral on the debt under the note and that when foreclosed upon any money realized is to be applied as a credit against the judgment.[1]

■ A promissory note imports a promise to pay in money and nothing else. *Matter of Estate of White,* 665 S.W.2d 67, 71 (Mo.App.1984). If payment is to be made in any fashion other than money, such proof must rest upon an independent agreement to that effect. *H.W. Eddy Insurance, Inc. v. National Union Fire Insurance,* 94 S.W.2d 1062, 1065–66 (Mo.App.1936). The record here does not reflect that any such agreement was made.

Considered in the light most favorable to the trial court's judgment, the record reflects that the stock was issued to Green Acres on August 2, 1979, and thereafter, on August 10, 1979, Freeman recorded the mortgage on the Louisiana land to secure the note. The mortgage reflected that the full debt on the note was due. If the stock had satisfied the debt, there would have been no reason to record the mortgage. Additionally, Green Acres was listed as a lien holder on the Louisiana property under a policy of insurance in 1980 where Freeman was the insured. Once again, if the stock had satisfied the debt there would have been no reason for this to have been done.

There was also evidence that on one occasion when Freeman said he was going to pay Green Acres on the note, Jenkins returned the stock to Freeman. Then when Freeman did not pay the note he returned the stock to Jenkins. This supports the position of Green Acres that the stock was merely collateral and not payment of the debt.

Freeman's second point is denied.

In his fourth point, Freeman argues that the trial court erred by applying Missouri's ten year statute of limitations. Freeman argues that the note was only subject to enforcement under Louisiana law which has a five year statute of limitations. In his seventh point, Freeman argues that application of Missouri law was against the weight of the evidence, is unsupported by substantial evidence, and erroneously applies the law. In his eighth point, Freeman argues that the documentary evidence conclusively establishes that the note was executed, delivered, and accepted in Louisiana and, therefore, Louisiana law applies and the action is barred by Louisiana's five year statute of limitations. In his ninth point, Freeman argues that the evidence does not establish that the Louisiana statute of limitations was tolled and it therefore barred the action herein. These points all turn on whether Louisiana's five year statute of limitations or Missouri's ten year statute applies.

■ Primarily in order to prevent forum shopping, Missouri borrows the statute of limitations of the state where a cause of action "originates or accrues." *Finnegan v. Squire Publishers, Inc.,* 765 S.W.2d 703, 704–05 (Mo.App.1989). Missouri's borrowing statute is section 516.190, RSMo 1986. No

---

1. Green Acres further argues that the stock is worthless.

conflict of law question is presented when a borrowing statute is involved because the borrowing statute constitutes a codification by the Missouri Legislature of a conflicts rule. *Id.* at 707. A cause of action accrues against the maker of a demand instrument on the date of the instrument or the date of the instrument's issue. *Centerre Bank of Kansas City, N.A. v. Distributors, Inc.,* 705 S.W.2d 42, 47 (Mo.App.1985). Therefore, generally a demand instrument originates in the state where it is issued.

■■■ Freeman argues that the note was issued in Louisiana and Green Acres argues that the note was issued in Missouri. There was substantial evidence in the record for the court to have found that the note herein was issued in Missouri and, therefore, to have applied the Missouri ten year statute of limitations.

The record reflects that Freeman and Jenkins met at the First National Bank at Butler, Missouri, where Jenkins obtained the money which was loaned to Freeman. Jenkins testified that the note was signed at the bank. Freeman presented evidence to show that he signed the note in Louisiana, but the trial court was free to disbelieve this evidence.

Jenkins testified that after the note was signed at Butler, Missouri, Freeman took the note to Louisiana to have it recorded along with a mortgage on Louisiana property. Freeman argues that the notations placed on the note and mortgage when recorded in Louisiana prove otherwise. As stated previously, the mortgage was recorded in Louisiana on August 10, 1979.

When the note was presented in Louisiana along with the mortgage, the language "Ne Varietur as per mortgage of this date" was stamped on it. The record reflects that "ne varietur" means to "identify with another document." The attorney who recorded the mortgage in Louisiana testified that he compared or "paraphed" the note to the mortgage. The same attorney testified that the notation did not evidence that the note was signed in his presence in Louisiana as Freeman maintains.

There was sufficient evidence for the trial court to apply the Missouri ten year statute of limitations. Freeman's fourth, seventh, eighth, and ninth points are denied.

In his fifth and sixth points, Freeman argues that the promissory note was not a promise to pay money and that Green Acres did not prove a money lent cause of action which would entitle it to recover the money lent.

■■■ Under Missouri law, in a suit on a promissory note a plaintiff makes a prima facie case by producing the note admittedly signed by the defendant and showing the balance due. *Bank of Brookfield–Purdin, N.A. v. Burns,* 724 S.W.2d 262, 264 (Mo.App. 1986). Where signatures are admitted or established, production of the note entitles the holder of the note to recover on it unless the defendant establishes a defense. *Id.*

■■■ Freeman's arguments in defense seem to be satisfaction by means of the Jenway stock, a matter discussed and rejected under Freeman's second point herein, and that Louisiana law applies because of the "ne varietur" notation on the note. Freeman argues that under Louisiana law this makes the note a collateral mortgage note to secure advances and not a promise to pay money.

Even if Louisiana law were somehow to apply, it would not support Freeman's argument. There are two different types of mortgages in Louisiana. One type is the conventional mortgage. The conventional mortgage secures a regular run-of-the-mill promissory note. There are two documents involved in this transaction: the promissory note and the mortgage. The note may be compared to the mortgage, to identify it to the mortgage, but it is still a conventional note and mortgage. The other type of mortgage in Louisiana is the collateral mortgage, which involves three documents: 1) the collateral mortgage note, 2) a hand note, and 3) the mortgage. This three document transaction is for the purpose of securing future advances from an unnamed future holder of the notes. Max Nathan, Jr. & H. Gayle Marshall, *The Collateral Mortgage,* 33 La. L.Rev. 497 (1973).

The case at bar does not involve a collateral mortgage. With a collateral mortgage, the mortgage and the collateral mortgage note are made payable to an unnamed bearer or future holder for a maximum amount and there is not actually a loan until a loan is later made, and when that is done the loan is evidenced by a hand note. *Id.* In the conventional or ordinary mortgage, a note is executed saying that it is payable to a specific payee and for a specific amount as was done in the case at bar. Louisiana law does not aid Freeman.

Freeman has failed to establish any defense. Thus, Green Acres is entitled to recover on the promissory note.

Freeman's fifth and sixth points are denied.

In his tenth and final point, Freeman argues that the trial court erred by awarding excessive interest. Freeman complains specifically that the trial court improperly compounded pre-judgment interest and improperly awarded post-judgment interest at the contract rate.[2]

■ Interest cannot be compounded absent an agreement between the parties. *Love Real Estate v. Lincoln American Land Ltd. Partnership,* 751 S.W.2d 759, 763 (Mo. App.1988). In the case at bar, the note provided that Freeman was to pay to the order of Green Acres the sum of $418,000 "[w]ith thirteen (13) per cent per annum interest from date until paid" and for attorney's fees fixed at ten percent. Principal and interest were due and payable on demand.

The terms of the note did not provide for the compounding of interest and the trial court erred by awarding compounded pre-judgment interest. Green Acres is entitled to simple interest at the rate of 13% from

July 26, 1979 to the date of judgment, May 28, 1993.

■ Freeman further complains that the trial court erred by awarding post-judgment interest at the rate of 13%. Freeman apparently complains here that awarding post-judgment interest at the contract rate of 13% is unfair because it has the effect of compounding the pre-judgment interest.

■ Pre-judgment interest is awarded on the theory that it is necessary to give full compensation for the loss sustained. On the other hand, post-judgment interest is awarded on the theory that it is a penalty for delayed payment of the judgment. *Boatmen's First Nat'l Bank v. Bogina Petroleum Engineers,* 794 S.W.2d 703, 705 (Mo.App. 1990). A judgment bears interest at the rate allowed by law even if the judgment is made up partly of pre-judgment interest. *Id.* at 706.

The trial court did not err by allowing post-judgment interest at the contract rate of 13%.

The judgment of the trial court compounding pre-judgment interest is reversed. The judgment finding on behalf of Green Acres and against Freeman, as a guarantor, on Count II, is also reversed. In all other respects, the judgment of the trial court is affirmed. Accordingly, this cause is remanded for the trial court to enter judgment, in favor of Green Acres and against Freeman, reflecting simple interest at the rate of 13% from July 26, 1979 to May 28, 1993.[3]

All concur.

---

**2.** Green Acres claims that Freeman has waived any argument in this regard by not having presented his arguments to the trial court. However, the question of interest was presented to and decided by the trial court. Furthermore, a motion for new trial is not necessary to preserve error in a court tried case. *Centerre Bank of Branson v. Campbell,* 744 S.W.2d 490, 496 (Mo. App.1988).

**3.** 13% of $418,000 equals $54,340 interest due annually for a total of pre-judgment interest in the amount of $709,576.88. Said pre-judgment interest plus attorney's fees in accordance with the court's award of $41,800, plus the principal amount of $418,000 results in Green Acres being entitled to judgment against Freeman in the total amount of $1,169,376.88 plus interest on said total amount from the date of judgment entry,

May 28, 1993, at the rate of 13% per annum,     simple interest.