

# In the
# Missouri Court of Appeals
## Western District

JANET WINSLOW PETERSON AND
LINDA WINSLOW LAMBRIGHT,

    Appellants-Respondents,

v.

DISCOVER PROPERTY &
CASUALTY INSURANCE
COMPANY,

    Respondent-Appellant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**WD76852 Consolidated with
WD76858**

**OPINION FILED: January 13, 2015**

**Appeal from the Circuit Court of Buchanan County, Missouri**
The Honorable Randall R. Jackson, Judge

Before Division Three: Karen King Mitchell, Presiding Judge, Alok Ahuja, Chief Judge
and Gary D. Witt, Judge

After a one-car automobile accident on a bridge, two plaintiffs sought damages for

wrongful death and personal injuries against, *inter alia*, the Missouri Highway and

Transportation Commission ("MHTC") and one of its contractors, Progressive

Contractors, Inc. ("PCI"). As part of bridge repairs, PCI had cut a hole into which the

automobile traveled. Appellant/Cross-Respondent Discover Property and Casualty

Insurance Company ("Discover") is PCI's insurer and, through an endorsement in the commercial general liability policy, is MHTC's putative insurer.

This appeal and cross-appeal derive from an agreement pursuant to Section 537.065[1] settling claims of wrongful death and personal injury regarding one of multiple defendants and a consent judgment entered thereon. An equitable garnishment action and related summary judgment proceedings based on the settlement agreement and consent judgment frame the issues before us.

Appellant/Cross-Respondent Discover claims error (1) in the trial court's reading of the language of the insurance policy that gave rise to the Section 537.065 settlement, (2) in the application of Section 537.065, and (3) as to the assessment of post-judgment interest. We affirm the trial court's rulings as to the first two claims raised by Discover and reverse as to Discover's claim related to post-judgment interest. Respondents/Cross-Appellants Janet Winslow Peterson ("Janet")[2] and Linda Lambright ("Linda") claim error (1) in two points regarding the trial court's ruling as to the adequacy of one of Discover's affirmative defenses, and (2) in a third point as to the trial court's reduction of the damage amounts in the settlement agreement. We reverse the trial court's ruling as to the adequacy of the affirmative defense, which renders moot Janet and Linda's third claim of error.

---

[1]All statutory references are to RSMo 2000 as currently supplemented unless otherwise indicated.
[2]For ease of reference we refer to some parties by their first names. No disrespect or familiarity is intended.

2

Janet and Linda are the original two plaintiffs in an underlying civil action that has generated an extensive procedural history. Following a serious automobile accident, Janet sued three defendants for personal injury. Linda, together with Janet, brought suit for the wrongful death of their mother, who died as a result of the injuries she sustained in the accident against the same defendants.

The accident giving rise to the injury and death occurred on a bridge over which the MHTC had possession or control. PCI was under contract with MHTC to perform certain construction work on the bridge. PCI sub-contracted with Highway Technologies, Inc. ("HTI") for traffic control services regarding that construction. As explained more fully below, MHTC, PCI, and HTI were all three defendants in the underlying action. In this second appeal, the parties consist only of the original plaintiffs (Janet and Linda) and the putative insurer of MHTC, Discover.

## Underlying Facts

On September 23, 2007, Tiffany Peterson ("Tiffany") was driving a car that was involved in a single-car accident. The accident occurred at approximately 9 p.m. on eastbound U.S. Highway 36 on a bridge over the Missouri River in between Elwood, Kansas and St. Joseph, Missouri. Though no workers were present on the bridge at the time of the accident, PCI was in the process of replacing the expansion joints on the bridge, pursuant to its contract with MHTC. As part of that work, PCI had cut a long

---

[3]We view the facts in the light most favorable to the trial court's judgment. *Snellen v. Capital Region Med. Ctr.*, 422 S.W.3d 343, 346 n.1 (Mo. App. W.D. 2013) (citations omitted). Portions of the factual and procedural history are taken from *Peterson v. Progressive Contractors, Inc.*, 399 S.W.3d 850 (Mo. App. W.D. 2013) without further attribution.

rectangular hole in the bridge. HTI had put into place various traffic control devices to warn drivers of the construction zone and to divert traffic from the lane of travel where the hole was located.

Notwithstanding the traffic control devices, Tiffany believed she could permissibly access an exit from U.S. Highway 36 to I-229 Highway. Tiffany drove between traffic channelizers (devices used to delineate the traffic path through a work zone) into the right lane of travel toward the exit ramp. Before reaching the ramp, Tiffany's car dropped into the hole on the bridge where PCI had removed an expansion joint.

There were two passengers in her car at that time. Tiffany's mother, Janet, was seated in the back seat behind Tiffany. Janet's mother (Tiffany's grandmother), Virginia Winslow ("Virginia"), was seated in the front passenger seat. Janet and Virginia sustained injuries in the accident. Virginia suffered from her injuries for several months until her death on February 24, 2008.

**Underlying Action**

Janet and Linda filed a six-count petition for Janet's personal injuries and for the wrongful death of their mother, Virginia, against MHTC, PCI, and HTI. Janet and Linda asserted that the defendants failed to exercise ordinary care to ensure that the work zone through which Tiffany traveled was in a reasonably safe condition for motorized traffic. As to MHTC, Janet and Linda premised their suit in part on the "dangerous condition" exception to sovereign immunity found in Section 537.600.1(2).

4

Additionally, Janet and Linda alleged the following general allegation as to all defendants:

> On the knowledge and belief of Plaintiffs, the hole was cut in the bridge by employees and/or agents of the MHTC/MoDOT and PCI as part of the construction project pursuant to the general contract between MHTC and PCI. Defendants are vicariously liable for the wrongful acts and negligent conduct of their employees and/or agents, done within the course and scope of their employment and/or agency, as alleged, *infra*.

Count I of the First Amended Petition contained the wrongful death allegation against MHTC, and Count IV contained the negligence claim for personal injury to Janet against MHTC. The remaining counts contained allegations against PCI and HTI but did not include MHTC.

### Insurance Policy

Discover issued to PCI a Commercial General Liability Policy (the "Policy") for the period of April 1, 2007 through April 1, 2008. The Policy begins by noting that "[v]arious provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and what is not covered." The policy then is outlined with five main headings: I. COVERAGES, II. WHO IS AN INSURED, III. LIMITS OF INSURANCE, IV. COMMERCIAL GENERAL LIABILITY CONDITIONS, V. DEFINITIONS (terms below that appear in quotations are defined in the fifth section of the policy).

Following those five sections is an endorsement titled "BLANKET ADDITIONAL INSURED (CONTRACTORS)."

5

Section II -- WHO IS AN INSURED is amended to include any person or organization that you agree in a "written contract requiring insurance" to include as an additional insured on this Coverage Part, but:

a) Only with respect to liability for "bodily injury," "property damage" or "personal and advertising injury"; and

b) If and only to the extent that, the injury or damage is caused by acts or omissions of you or your subcontractor in the performance of "your work" to which the "written contract requiring insurance" applies. The person or organization does not qualify as an additional insured with respect to the independent acts or omissions of such person or organization.

The parties agree (without citation to the record) that the relationship between MHTC and PCI was formalized by a written contract that required PCI to list MHTC as an "additional insured" under the Policy, as is common in the industry. As developed more fully below, Discover does not dispute that MHTC "could become" an additional insured under the endorsement but argues that it "did not become an additional insured."

Discover accepted the tender of defense on behalf of MHTC in the underlying action but provided the defense under a reservation of rights. Because Discover refused to defend MHTC without the reservation of rights, MHTC later rejected Discover's tendered defense. MHTC then hired independent counsel.

### Section 537.065 Agreement and Consent Judgment

In 2011, with the new attorneys and shortly before trial on the six-count complaint, Janet and Linda settled with MHTC pursuant to a Section 537.065

agreement.[4]  The agreement settled all of Janet's and Linda's claims against MHTC (Counts I and IV) with the provision that Janet and Linda would only seek satisfaction of the claims against the Policy.  The settlement amount was $700,000.  The agreement did not allocate the $700,000 between the personal injury claims and the wrongful death action.

After the Section 537.065 agreement was finalized but before a hearing took place approving the settlement, Janet and Linda stipulated and agreed that $380,000 of the settlement was to be allocated to the wrongful death claim and that $320,000 was to be allocated to Janet's personal injury claim.  Neither MHTC nor Discover had any part in the allocation of the settlement, and the allocation of the damages was not part of the settlement agreement.

An order approving the settlement and apportionment of the damages as well as a consent judgment were entered September 30, 2011.

### Jury Trial Proceedings as to PCI and HTI in the Underlying Action

In the midst of the proceedings surrounding the settlement agreement, Janet's claims for her personal injuries and Janet and Linda's claims for the wrongful death of their mother proceeded to trial against the remaining defendants, PCI and HTI.  On July 13, 2011, a jury returned its verdict in favor of PCI and HTI.  The trial court entered judgment accordingly and post-trial motions were denied; we affirmed the trial court's judgment in that case on May 23, 2013.  *Peterson,* 399 S.W.3d 850.

---

[4]That section allows a claimant and a tort-feasor to settle a claim and enter an agreement to limit recovery of damages to specified assets such as insurance coverage. *Ice Castles, Inc. v. Gross Ins. Agency, Inc*., 391 S.W.3d 506, 508 n.4 (Mo. App. W.D. 2013).

## Equitable Garnishment Action

After Discover refused to pay the consent judgment against MHTC under the Policy, Janet and Linda brought an equitable garnishment action pursuant to Section 379.200.[5] Discover contended that there was no coverage under the Policy, that it was not bound by the settlement agreement, and that it was not obligated to pay the consent judgment.

Discover moved for summary judgment, alleging that it was entitled to judgment as a matter of law on the issue of coverage. Janet and Linda moved for partial summary judgment, alleging that they were entitled to judgment as matter of law on the issue of coverage. The trial court granted Janet and Linda's motion on the issue of coverage and denied Discover's motion.

## Reasonableness of Settlement Amount[6]

In Discover's Answer to Janet and Linda's equitable garnishment action, Discover challenged the reasonableness of the settlement amount as an affirmative defense. Specifically, Discover alleged: "The amounts of the settlements and/or judgments for which plaintiffs seek garnishment are not reasonable, including, but not limited to, the fact that the settlement unreasonably valued the alleged wrongful death and the personal injury claims at the [sic] about the same amount."

---

[5]In this equitable garnishment action, Janet and Linda bore the burden of proving (1) that they obtained a judgment against MHTC, (2) that Discover's policy covered the damages awarded in the judgment, and (3) that the policy was in effect at the time the accident occurred. *Taggart v. Md. Cas. Co.*, 242 S.W.3d 755, 758 (Mo. App. W.D. 2008). In the proceedings below, Discover only challenged the second element, that the damages were covered by the policy.

[6]A settlement amount under Section 537.065 can be challenged for fraud or collusion and for reasonableness. *Gulf Ins. Co. v. Noble Broadcast*, 936 S.W.2d 810, 815 (Mo. banc 1997). In the proceedings below, Discover challenged the settlement only on the ground of reasonableness.

Janet and Linda challenged this affirmative defense in a motion in limine, arguing that Discover failed to plead the ultimate facts, as required, showing its entitlement to the defense. The trial court took that motion under advisement and the cause proceeded to trial on the reasonableness of the settlement amounts. Discover made no request to amend its pleadings in any fashion.

Discover's evidence included testimony from MHTC's independent counsel regarding his opinion of the settlement value of Janet's and Linda's claims, which was that the value was less than $700,000. Discover also presented evidence and argument concerning Janet's lost wages, medical treatment and expenses, and Discover disputed liability, including whether Virginia's death was caused by the accident. However, no evidence was presented that the settlement was unreasonable due to the allocation of the settlement amounts between the personal injury and wrongful death claims.

On August 2, 2013, the trial court entered its judgment on the equitable garnishment judgment with written findings of fact and conclusions of law. The court concluded that the affirmative defense was pled adequately and that Janet and Linda had notice of Discover's position that the settlement amount was unreasonable. Additionally, the court determined that Discover had carried its burden of proof that the Section 537.065 settlement was unreasonable. The court lowered the total settlement amount from $700,000 to $425,000, reducing the amount of the wrongful death claim from $380,000 to $300,000 and the amount of the personal injury claim from $320,000 to $125,000.

9

## Post-judgment interest

After judgment was entered in the equitable garnishment action, Janet and Linda moved for an amendment of the trial court's August 2, 2013 judgment demanding post-judgment interest pursuant to Section 408.040.2.[7]  Janet and Linda requested and received an award of post-judgment interest based on a calculation of the reduced settlement amount, dating back to the consent judgment entered on September 29, 2011.[8] On September 3, 2013, the trial court awarded Janet and Linda post-judgment interest dating from the September 29, 2011 consent judgment through September 3, 2013, presumably awarding interest against MHTC, to be indemnified by Discover.  Though not an issue on appeal, the trial court additionally granted Janet and Linda post-judgment interest on the equitable garnishment judgment (apart from the interest awarded as to the consent judgment) beginning September 3, 2013.

## OVERVIEW OF ISSUES

Discover brings two points on appeal from summary judgment entered pursuant to the equitable garnishment action and one point on appeal stemming from the trial court's amendment to the judgment on the equitable garnishment action.  More specifically, Discover argues in its first two points that the trial court erred in denying its motion for summary judgment and in granting Janet and Linda's motion for partial summary judgment based on contractual language in the Policy and based on the language of

---

[7]This reference is to RSMo Cum. Supp. 2013.  The Legislature amended Section 408.040 since judgment was entered in this case (such that Section 408.040.2 is now found at Section 408.040.3), but the amendment does not affect our analysis in this case.

[8]The consent judgment was dated September 29, 2011 but was signed on September 30, 2011.  No party, however, raises a challenge to the date assigned it in the amended equitable garnishment judgment of September 29, 2011.

Section 537.065. In its third point, Discover argues that the trial court erred in granting Janet and Linda's motion to amend the equitable garnishment judgment so as to award post-judgment interest on the consent judgment.

Janet and Linda bring three points on appeal from the equitable garnishment judgment. In their first two points on appeal, Janet and Linda argue that the trial court erred in finding that Discover adequately pled an affirmative defense and they allege error based on the language of that defense. In their third point on appeal, Janet and Linda argue that the trial court erred in finding the settlement amounts unreasonable and reducing those amounts.

## ANALYSIS

We address the claims of error out of order because Discover's first two points on appeal are threshold matters. If, as Discover asserts in its first point on cross-appeal, there is no coverage under the policy, we need not reach the remaining issues. Alternately, if, as Discover asserts in its second point on cross-appeal, Section 537.065 does not allow Janet and Linda to recover, we need not address the remaining issues. Therefore, we begin with these threshold matters.

### DISCOVER'S POINT I: Policy Language

The issue in Discover's first point is whether an additional insured party under the Policy can settle a pending lawsuit and seek indemnification under the Policy where the primary named insured is found not to be liable after the settlement agreement has been finalized. Discover argues that an additional insured party cannot settle its claims and be indemnified because the coverage of the additional insured party hinges on a pre-

11

determination of liability of the primary named insured party.  Under the clear terms of policy language at hand, we disagree with Discover.

## Standard of Review

Our Supreme Court has set forth the standard of review of a summary judgment:

> Summary judgment is appropriate only when the moving party demonstrates that there is no genuine dispute as to the facts and that the facts as admitted show a legal right to judgment for the movant.  The movant bears the burden of establishing both a legal right to judgment and the absence of any genuine issue of material fact required to support the claimed right to judgment.  The propriety of summary judgment is purely an issue of law, and this Court's review is essentially *de novo*.  As the trial court's judgment is founded on the record submitted and the law, an appellate court need not defer to the trial court's order granting summary judgment.

*Bob DeGeorge Assoc.'s, Inc. v. Hawthorn Bank*, 377 S.W.3d 592, 596 (Mo. banc 2012) (quoting *ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 380 (Mo. banc 1993)) (quotations omitted).

## General Principles of Insurance Policy Interpretation

The interpretation of an insurance policy is a question of law that we determine *de novo*.  *Seeck v. Geico Gen. Ins. Co.*, 212 S.W.3d 129, 132 (Mo. banc 2007) (citations omitted); *Blumer v. Auto. Club Inter-Ins. Exch.*, 340 S.W.3d 214, 218 (Mo. App. W.D. 2011) (holding that where "resolution of the case involves the interpretation of an insurance contract, we give no deference to the circuit court as contract interpretation is a question of law").

It is a longstanding principle that courts "read a contract as a whole and determine the intent of the parties, giving effect to that intent by enforcing the contract as written."

*Thiemann v. Columbia Pub. Sch. Dist.*, 338 S.W.3d 835, 840 (Mo. App. W.D. 2011) (citation omitted). In so doing, we give the language in an insurance contract its plain and ordinary meaning. *Id.* "If, giving the language used its plain and ordinary meaning, the intent of the parties is clear and unambiguous, we cannot resort to rules of construction to interpret the contract." *Id.* Mere disagreement over the interpretation of the terms of a contract does not create an ambiguity. *Id.* In examining whether the language used in an insurance policy is ambiguous, the language is considered in the light in which it would normally be understood by the lay person who bought and paid for the policy. *Blumer,* 340 S.W.3d at 218 (citation omitted). If no ambiguity exists, the insurance contract will be enforced as written. *Rodriguez v. Gen. Accident Ins. Co. of Am.*, 808 S.W.2d 379, 382 (Mo. banc 1991) (citation omitted).

An "ambiguity exists when there is duplicity, indistinctness, or uncertainty in the meaning of the language in the policy." *Seeck,* 212 S.W.3d at 132 (citation omitted); *see also Mendota Ins. Co. v. Ware*, 348 S.W.3d 68, 71 (Mo. App. 2011) (stating that the "insured is entitled to a pro-coverage interpretation of an insurance policy if the terms are susceptible of two possible interpretations and there is room for construction") (internal citations and quotations omitted). We resolve "ambiguities in favor of the insured." *Fanning v. Progressive Nw. Ins. Co.*, 412 S.W.3d 360, 364 (Mo. App. W.D. 2013) (citations omitted). "This rule is especially applicable where insurance is first 'granted' and is then followed by provisions limiting or avoiding liability." *Rice v. Shelter Mut. Ins. Co.*, 301 S.W.3d 43, 47 (Mo. banc 2009) (citation omitted).

13

"[T]he insured bears the burden of proving coverage under an insurance policy." *Fischer v. First Am. Title Ins. Co.*, 388 S.W.3d 181, 187 (Mo. App. W.D. 2012) (citation omitted). However, "[i]n general, an insurance policy is a contract to afford protection to an insured and will be interpreted, if reasonably possible, to provide coverage." *Shiddell v. Bar Plan Mut.*, 385 S.W.3d 478, 483 (Mo. App. W.D. 2012) (citation omitted). In contrast, Missouri strictly construes exclusionary clauses against the drafter. *Manner v. Schiermeier*, 393 S.W.3d 58, 62 (Mo. banc 2013) (citation omitted). "The burden of showing that an exclusion to coverage applies is on the insurer." *Id.* The *Manner* court explicitly noted in the context of a summary judgment, which is the procedural juncture we face here, that the "burden was on the insurers to prove" that an exclusion applied. *Id.* at 60. We construe ambiguities in favor of the insured for two reasons:

> (1) insurance is designed to furnish protection to the insured, not defeat it; ambiguous provisions of a policy designed to cut down, restrict, or limit insurance coverage already granted, or which introduce exceptions or exemptions, must be *strictly construed* against the insurer; and (2) as the drafter of the policy, the insurance company is in the better position to remove the ambiguity from the contract.

*Golden Rule Ins. Co. v. R.S.,* 368 S.W.3d 327, 334 (Mo. App. W.D. 2012) (citation omitted) (emphasis added).

### MHTC is covered under the Policy

The following provision from the endorsement for contractors is as follows:

> Section II - WHO IS AN INSURED is amended to include any person or organization that you agree in a "written contract requiring insurance"[9] to include as an additional insured on this Coverage Part, but

---

[9]Pursuant to the definition section of the policy:

14

. . .

b) If and only to the extent that, the injury or damage is caused by acts or omissions of you or your subcontractor in the performance of "your work"[10] to which the "written contract requiring insurance" applies. The person or organization does not qualify as an additional insured with respect to the independent acts or omissions of such person or organization.

The parties agree that, under the facts of this case, "you" means PCI, that "your subcontractor" means HTI, and that "the person or organization" referred to as the additional insured is MHTC. Additionally, although the parties do not include a citation to the record indicating the scope of the contract between MHTC and PCI, it is undisputed that MHTC contracted with PCI to replace the expansion joints on the bridge and that Tiffany's vehicle drove into a hole in the work zone of the bridge that PCI cut as part of its work replacing the expansion joints. It was also undisputed that PCI subcontracted with HTI to provide the traffic control for the area where the construction was occurring at the time of the accident.

Discover additionally concedes in its brief that "by operation of the Additional Insured Endorsement and subject to the terms and conditions contained therein, MHTC

---

"Written contract requiring insurance" means that part of any written contract or agreement under which you are required to include a person or organization as an additional insured on the Coverage Part, provide that the "bodily injury" and "property damage" occurs and the "personal and advertising injury" is caused by an offense committed: a. After the signing and execution in of the contract or agreement by you; b. While the part of the contract or agreement is in effect; and c. Before the end of the policy period.

[10]The definitions section of the policy states that "your work":

a. Means
(1) Work or operations performed by you or on your behalf; and
(2) Materials, parts or equipment furnished in connection with such work or operations.
b. Includes
(1) Warranties or representations made at any time with respect to the fitness, quality durability, performance or use of "your work", and
(2) The providing of or failure to provide warnings or instructions.

15

could become an additional insured."  Without alleging any acts or omissions of MHTC that could have caused the accident, Discover argues that the jury determination takes the accident outside the scope of paragraph "b." Put another way, Discover argues that although MHTC could have become an additional insured, it did not become an additional insured because of the jury verdict and judgment thereupon entered *after* the settlement was formed.  Discover accordingly argues that it has no duty to indemnify (1) because the first sentence of paragraph "b" restricts coverage to damage or injury caused by acts or omissions of PCI or HTI while performing their work and that a jury found in favor of PCI and HTI on the negligence claims against them, and (2) because the second sentence of paragraph "b" excludes the acts and omissions of MHTC, which, by process of elimination, must be the cause of the accident because of the jury verdict.  Discover concludes that it is "indisputable that the 'work' of PCI and HTI did not cause any of the injuries or damages to be covered here.  They were not negligent."  Put most bluntly, Discover argues that the "Policy says that MHTC is covered if, and only if, PCI or HTI caused vicarious liability for MHTC" and because the jury found in favor of PCI and HTI there could be no vicarious liability.

As noted above, the plain language of the policy guarantees coverage "to the extent that, the injury or damage is ***caused by*** acts or omissions of you or your subcontractor." (Emphasis added).  As such, in order for Discover's argument to succeed, this court must agree that the jury's finding that PCI and HTI were not negligent on the claims submitted to the jury necessarily means that the personal injuries and wrongful death were not -- in the words of the Policy -- "caused by" the work of PCI and HTI.  In

16

essence, Discover asks this court to determine that a lay person purchasing this insurance would understand the "caused by" language to amount to a pre-determination of negligence on the part of the named insured. *See Blumer*, 340 S.W.3d at 218 (holding that policy language is considered in the light in which it would normally be understood by the lay person who bought and paid for the policy).

The trial court's plain reading of the endorsement yielded the following findings of facts and conclusion of law:

> Plaintiffs claim in their Motion that under the undisputed material facts, the damages awarded them in the Consent Judgment on their settled claims were for bodily injury caused by the acts or omissions of PCI or its subcontractor in their performance of their work on the Bridge, pursuant to PCI's written contract with MHTC requiring insurance. In its Motion and its opposition to Plaintiffs' Motion, Discover does not dispute that the damages were for bodily injury or that its contract with MHTC required insurance, but it does dispute that the damages that were awarded Plaintiffs in their settled claims were not caused by acts or omissions of PCI or its subcontractor, HTI, contending that the settled claims were only for MHTC's alleged liability for its own independent acts or omissions.

> As a matter of law, in interpreting Plaintiff's alleged claims against MHTC, they were in keeping with claims authorized by § 537.600.1(2). . . . Moreover, as interpreted, those claims were based upon the acts or omissions of PCI and/or HIT in performing their work on the Bridge, based upon their contracts for that work. Accordingly, on the undisputed facts, as a matter of law, Plaintiff's settled claims against MHTC were based upon MHTC's liability caused by or resulting from the acts or omissions of PCI and HTI in performing their work on the Bridge, for which PCI had been contracted in the same contract in which it was required to provide insurance. And, because the damages awarded Plaintiffs in the Consent Judgment were for those same settled claims, on the undisputed facts, as a matter of law, there is coverage under the [endorsement] of the Policy for those damages.

The additional insured endorsement is not ambiguous. The endorsement applies where injury or damage is "caused by" the named insured or its subcontractor. "Cause" is

17

not defined in the policy, so "it is necessary to use the ordinary meaning of the word, as set forth in the dictionary." *Schmitz v. Great Am. Assur. Co.*, 337 S.W.3d 700, 708 (Mo. banc 2011).

"Cause" as a verb means "to serve as cause or occasion of: bring into existence." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 356 (unabridged 1993).[11] *Cf. Callahan v. Cardinal Glennon Hosp.*, 863 S.W.2d 852, 860-61 (Mo. banc 1993) ("The 'but for' causation test provides that the defendant's conduct is a cause of the event if the event would not have occurred 'but for' that conduct. Put simply, 'but for' causation tests for causation in fact. Mere logic requires causation in fact." (citation and other internal quotation marks omitted); *id.* at 862 ("'But for' is an absolute minimum for causation because it is merely causation in fact. Any attempt to find liability absent actual causation is an attempt to connect the defendant with an injury or event that the defendant had nothing to do with.") Although there was a jury finding of no negligence, there is no genuine dispute that the acts or omissions of PCI and HTI brought into existence the conditions of the bridge that led to the injuries. Stated another way, it is beyond dispute that, but for the hole cut into the bridge by PCI and the traffic control devices installed by HTI, the injuries would not have occurred. Indeed, Discover does not contest the trial court's finding of fact that Tiffany's vehicle drove into a hole in the work zone of the bridge that PCI cut as part of its work replacing the expansion joints. And there is no hint from Webster's definition and the common-sense reading of the word

---

[11]We use the Webster's dictionary definition because we review the language of an insurance policy in light of what would be understood by a normal lay person purchasing the policy. *Blumer,* 340 S.W.3d at 218. However, we briefly discuss the legal standard of "but for" causation because it too supports our holding.

18

"cause" that a pre-determination of fault or negligence or liability must exist prior to coverage taking effect.

Though inquiries such as these are policy-specific and situation-specific, courts have determined that somewhat analogous policy language in additional insured provisions does not necessarily require negligence on the part of the named insured before coverage is triggered. For example, in *Regal Homes, Inc. v. CNA Insurance*, the question was whether an additional insured endorsement applied where the named insured was determined to be free of fault in earlier litigation. 171 P.3d 610, 614 (Ariz. Ct. App. 2007). The *Regal* court held that although the underlying judgment "establishes either the absence of fault on the part of the [named insured] or the absence of proximate cause or both, the test for coverage under the . . . policies is different." *Id.* The court reasoned that the broad language of the policy ("arising out of") did not require traditional proximate cause and that the causal nexus was sufficient to warrant the conclusion that the accident was "incident to or connected with" the named insured's activity. *Id.* at 615 (citation omitted). The determination of no fault or liability on the part of the named insured did not resolve the question of the additional insured's liability under the policy because "the extent of the causal connection necessary to satisfy the 'arising out of' requirement is less than that required for proximate cause." *Id.* Similarly, in the case at bar, there is no policy language indicating that the act or omission of the named insured need entail a prerequisite liability determination or that it be the proximate cause of the damage or injury -- only that the act or omission caused the injury.

In *Marathon Ashland Pipe Line v. Maryland Casualty Co.*, the Court of Appeals for the Tenth Circuit reversed a lower court decision that interpreted policy language to require negligence on the part of the named insured before coverage was triggered. 243 F.3d 1232, 1237 (10th Cir. 2001). There, the endorsement stated that an additional insured is "the person or organization shown in the Schedule, but only with respect to liability arising out of your ongoing operations." The insurer argued that in order for the endorsement to apply, the named insured must be primarily negligent, with the additional insured no more than vicariously liable. *Id.* at 1240. The court, however, looked to other precedent indicating that where an endorsement provision is triggered by the term "arising out of," the policy is ambiguous as to whose negligence is covered and whose negligence is excluded from coverage. *Id.* (citation omitted). Although the question was whose negligence was covered under the endorsement rather than whether a finding of liability is a prerequisite to coverage, *Marathon* and other cases illustrate the importance of drafting the endorsement in a way that makes the role of fault or liability within scope of coverage clear. *See also Pacific Ins. Co. v. Liberty Mut. Ins. Co.*, 956 A.2d 1246, 1256-57 (Del. 2008) (holding that "'arising out of' is broadly construed to require some meaningful linkage" between the operations and resulting liability).

Had Discover intended to limit coverage only to cases where there was a pre-determined finding of liability (rather than mere causation), it may be possible to have done so. *See, e.g., Harbor Ins. Co. v. Lewis*, 562 F.Supp. 800 (D.C. Pa. 1983) (holding that there was no coverage for additional insured's negligence where the additional insured provision stated "IT IS AGREED THAT THE INSURANCE AFFORDED BY

20

THIS POLICY SHALL APPLY TO THE FOLLOWING ADDITIONAL INSUREDS *BUT ONLY TO THE EXTENT OF LIABILITY RESULTING FROM OCCURRENCES ARISING OUT OF NEGLIGENCE OF [NAMED INSUREDS]*") (emphasis added).[12]

Given that an insurance policy is a contract to afford protection to an insured and interpreted, if reasonably possible, to provide coverage, *Shiddell*, 385 S.W.3d at 483, the trial court did not err in determining that Janet and Linda met their burden of proving coverage under an insurance policy.

**Discover did not meet its burden of establishing that the Section 537.065 settlement was for MHTC's independent acts or omissions**

Discover does not point to any language in the trial court findings of "independent acts or omissions" on the part of MHTC so as to invoke the second, exclusionary sentence in paragraph "b." Discover offers the broad speculation that, by process of elimination through the jury verdict, MHTC's independent acts or omissions must be the meat of the settlement. While we question what it would be worth in light of the settlement in this case, Discover does not even direct us to any point in the legal file where a fact finder made such a determination.[13] Further, here, MHTC's separate acts or omissions, even if they existed, operated at best *in tandem* with the acts or omissions of PCI and HTI to cause Linda's and Janet's damages. In other words, there is no indication

---

[12]We know of no case where Missouri courts have interpreted the *Harbor* policy language. Without analysis or comment, we caution that we cite the case only as illustrative of policy language that was sufficient to support the insurer's position in a different challenge in a different jurisdiction.

[13]The jury instructions do not appear to be part of the record. Nonetheless, as reproduced in the first appeal of this case, the verdict instructions do not indicate that the jury made a determination regarding MHTC's acts or omissions. *Peterson*, 399 S.W.3d at 855.

21

in the record that MHTC's purely "independent" acts or omissions caused the injuries and death, as the exclusion expressly requires. Accordingly, Discover failed to meet its burden of establishing that it was entitled to summary judgment on that matter. *See Manner*, 393 S.W.3d at 60 (holding that "burden was on the insurers to prove" at summary judgment that an exclusion applied).

**Discover cannot collaterally attack the underlying judgment**

Discover additionally argues that its coverage obligations must be disposed of on the ground that MHTC could not be vicariously liable because PCI and HTI were not MHTC's employees and/or that vicarious liability was not properly alleged in the petition.[14]

Discover's arguments concerning potential defenses to a vicarious liability theory are irrelevant; as we explained above, the additional insured endorsement does not require that MHTC be vicariously liable for PCI and HTI, but only that MHTC face liability for injuries caused by PCI's and HTC's acts or omissions. And, even giving credit to the judgment entered in favor of PCI and HTI, the undeniable fact in this case is that the underlying injuries and death were "caused by acts or omissions of" PCI and HTI in cutting the hole in the bridge and installing the traffic control devices, even if some

---

[14]We additionally have concerns as to the adequacy of Discover's reservation-of-rights letter. The letter states that some of Janet's and Linda's allegations are not covered, including those related to the rendering or failure to render architectural, engineering and/or surveying services and supervisory activities. The letter also broadly references the exclusion language of the endorsement. However, it is nearly impossible to read the letter in a manner that embodies the arguments contained in Discover's first point on appeal, that coverage of the additional insured party hinges on a pre-determination of liability of the primary named insured party. "The reservation of rights letter should be 'specific and unambiguous,' should 'fully explain the insurer's position ... with respect to the coverage issue,' and 'must avoid any confusion.'" *Advantage Bldgs. & Exteriors, Inc. v. Mid-Continent Cas. Co.*, No. WD 76880, 2014 WL 4290814, at *4 (Mo. App. W.D. 2014) (quoting 22 HOLMES' APPLEMAN ON INSURANCE 2D § 136.7[B][2] (2003)).

independent actions of MHTC (failure to supervise or oversee, negligent design of the project, etc.) supported MHTC's <u>liability</u> for those injuries and death.  Given that there are no additional facts to be developed to establish coverage under the additional insured endorsement on the issue raised by Discover, we need not explore whether the later jury verdict in favor of PCI and HTI has preclusive effect on coverage issues, whether the facts pled in Linda and Janet's petition are relevant to coverage questions, or whether Discover had the right to present its own version of the underlying facts in the garnishment action despite its refusal to defend MHTC without a reservation of rights.

Our determination that MHTC is covered is in line with our state's public policy of encouraging settlement.  *Gabriel v. Saint Joseph License, LLC*, 425 S.W.3d 133, 140 (Mo. App. W.D. 2013).  In this case, it was wholly appropriate for MHTC to bind itself by a settlement agreement to limit its liability in the face of a petition that broadly alleged negligence by MHTC and its agents and where there was no indication that a policy exclusion applied.

Our holding is additionally in line with the broad purpose behind adding an additional insured to the policy:  "a construction contract may require that the subcontractor insure the general contractor under the subcontractor's insurance to cover liability arising from the work for which the subcontractor was hired."  3 Jeffrey E. Thomas and Francis J. Mootz, III, NEW APPLEMAN ON INSURANCE LAW LIBRARY EDITION § 16.05 (2014 update).  Here, although the parties do not provide a citation to the record for the agreement between MHTC and PCI, MHTC required in that agreement that PCI include an endorsement to limit its exposure for the work performed by PCI and

23

any subcontractor. Simply put, where an insurer requires a determination of liability as a prerequisite to coverage for the additional insured, the insurer can and must include such a prerequisite in the plain language of the policy. It cannot be left to the guess work of the insured.

This point is denied.

**DISCOVER'S POINT II: No plain-error review regarding the application of Section 537.065**

In its second point on cross-appeal, Discover argues that the trial court erred in finding a duty to indemnify under the policy because Section 537.065 only authorizes an equitable garnishment of claims against a "tort-feasor" and Discover disputes that MHTC was a "tort-feasor" under the statute.

Discover, however, failed to raise this argument before the trial court. Pursuant to Rule 74.04(c)(1),[15] a "motion for summary judgment shall summarily state the legal basis for the motion." Discover does not request plain-error review. "Although we may review an unpreserved claim for plain error, we rarely review for plain error in civil cases." *Bank of Am., N.A. v. Duff*, 422 S.W.3d 515, 519 (Mo. App. W.D. 2014) (citation omitted).

We note nonetheless that Section 537.065 "obviously . . . contemplates a situation where liability has not been finally determined and the term 'tort-feasor' refers to a person charged with liability for a tort." *Farmers Mut. Auto. Ins. Co. v. Drane*, 383 S.W.2d 714, 719 (Mo. 1964). Because the statute comes into play without the definitive establishment

---

[15]All rule references are to Missouri Supreme Court Rules (2014) unless indicated otherwise.

24

that a contracting party is a "tort-feasor," this term has been held inexact. *Id*. Here, Janet and Linda alleged tort liability against MHTC as well as vicarious liability and liability based on the acts of MHTC's agents. Moreover, although this issue was not raised, the Missouri Supreme Court recently enforced, in an equitable garnishment action, a Section 537.065 agreement made by plaintiffs with a defendant whom they sued only for vicarious liability. *Schmitz*, 337 S.W.3d at 704. We therefore decline to review this point for plain error.

This point is denied.

### JANET AND LINDA'S POINTS I and II: Error in Pleading of Affirmative Defense

Janet's and Linda's first two points on appeal assert error as to Discover's affirmative defense addressed in the equitable garnishment judgment (to be clear, this issue was not part of the summary judgment proceedings). In their first point, Janet and Linda argue that the trial court erred in finding for Discover on its affirmative defense attacking the reasonableness of the wrongful death portion of the settlement. Specifically, Janet and Linda argue that Discover did not plead ultimate facts in support of its affirmative defense because its only factual basis is that the allocation of the settlement money between the personal injury and the wrongful death was "about the same." In this point, Janet and Linda seek reversal of the equitable garnishment judgment with directions to enter judgment on the full amount of the $380,000 allocated for the wrongful death claim.

In their second point, Janet and Linda make the related argument that, when confining Discover's affirmative defense to an attack on the allocation of the settlement, the trial court could not have reasonably concluded that the personal injury settlement was unreasonable simply because it is "about the same" amount as the wrongful death settlement. Janet and Linda seek restoration of the $320,000 amount for the personal injury claim.

## Standard of Review

We review a bench-tried case under *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). "This Court will affirm the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law, accepting all evidence and inferences therefrom in the light most favorable to the prevailing party and disregarding all contrary evidence." *Essex Contracting Inc. v. Jefferson Cnty.*, 277 S.W.3d 647, 652 (Mo. banc 2009) (citation omitted).

## Discussion

These two points entail analysis of Discover's affirmative defense, which stated: "The amounts of the settlements and/or judgments for which plaintiffs seek garnishment are not reasonable, including, but not limited to, the fact that the settlement unreasonably valued the alleged wrongful death and the personal injury claims at the [sic] about the same amount."

Raising the reasonableness of the settlement as an affirmative defense is appropriate in proceedings relating to a Section 537.065 settlement. *Taggart*, 242

S.W.3d at 758-59. Pursuant to Rule 55.08, a "pleading that sets forth an affirmative defense or avoidance shall contain a short and plain statement of the *facts* showing that the pleader is entitled to the defense or avoidance." (emphasis added). "An 'affirmative defense' contemplates additional facts not included in the allegations necessary to support plaintiff's case and avers that plaintiff's theory of liability, even though sustained by the evidence, does not lead to recovery because the affirmative defense allows the defendant to avoid legal responsibility." *City of Peculiar v. Effertz Bros. Inc.*, 254 S.W.3d 51, 59 (Mo. App. W.D. 2008).

"A defendant must plead his affirmative defenses in his answer to the suit or they will be deemed waived." *Echols v. City of Riverside*, 332 S.W.3d 207, 210 (Mo. App. W.D. 2010) (citations omitted). "The purpose of pleadings is to present, define, and isolate the issues so the trial court and all of the parties have notice of those issues." *Id.* "The relief awarded in a judgment is limited to that sought by the pleadings." *Norman v. Wright*, 100 S.W.3d 783, 786 (Mo. banc 2003) (citations omitted).

In this case, Discover only pled facts alleging that the $700,000 lump-sum Section 537.065 settlement amount was unreasonable because $320,000 allocated in settlement of the personal injury claim was too much when compared to the $380,000 allocated in settlement of the wrongful death claim. In a nutshell, Discover did not allege facts indicating that the overall settlement amount was unreasonable or excessive, only that the distribution was unreasonable as to the way that amount was allocated between the two claims. In other words, in this affirmative defense, Discover simply alleged in a conclusory manner that Janet's personal injury claim was not reasonably worth a certain

27

percentage of the sisters' wrongful death settlement.[16]   However, evidence at trial included lost wages, medical treatment and expenses, and the extent to which Virginia's death was caused by the accident.

A pleading is insufficient where it is merely a legal conclusion.  *Echols*, 332 S.W.3d at 211.  The pleading in the case at bar is insufficient inasmuch as it concludes that the settlement amount was unreasonable only as to a comparison of the settlement amounts.  In pleading an affirmative defense, "it is necessary to set out the factual basis for the affirmative defense in the same manner as is required for the pleading of claims under the Missouri Rules of Civil Procedure."  *Damon Pursell Constr. Co. v. Mo. Highway & Transp. Comm'n*, 192 S.W.3d 461, 475 (Mo. App. W.D. 2006) (quotation omitted).  "A pleading that makes a conclusory statement and does not plead the specific facts required to support the affirmative defense fails to adequately raise the alleged affirmative defense, and the alleged affirmative defense fails as a matter of law."  *Peel v. Credit Acceptance Corp.*, 408 S.W.3d 191, 201 (Mo. App. W.D. 2013) (citation omitted).

The trial court's misunderstanding of this issue is evident in its following conclusion of law:

> Although no model of draftsmanship for pleading affirmative defenses, the allegations are sufficient to constitute ultimate facts that place Plaintiffs on notice of Defendant's position that the settlement was unreasonable. Defendant is not required to allege evidentiary details.  The basis of Defendant's allegation that the settlement was unreasonable was well-known to Plaintiffs prior to trial in this equitable garnishment action.

---

[16]Discover does not attempt to differentiate between the two injured parties' respective medical bills, future medical needs, lost wages, pain and suffering, or the myriad of other factors that are used to establish damages in either a personal injury claim or a wrongful death claim, let alone the different types of damages that may be submitted or disallowed in each type of claim.

While it is the case that Discover was not required to allege every evidentiary detail, it is not the case that Discover's affirmative defense presented, defined, and isolated the issues such that the trial court and all parties had notice of those bases for which Discover alleged the settlement was unreasonable. *Echols*, 332 S.W.3d at 211. Additionally, there is no meaningful argument by Discover that matters implicated by the affirmative defense were tried by implied consent, and in any event, the record clearly indicates that Janet and Linda were granted a standing objection at trial on the basis that the affirmative defense pleading was insufficient. Accordingly, because Discover cited no relevant facts to support its pleading that the settlement amount was unreasonable or excessive and introduced substantial evidence to establish facts not supported by its pleading, the affirmative defense must fail.

**Based on the pleadings, the trial court's determination that the settlement amount was unreasonable is erroneous**

Janet and Linda parse this issue into two points, arguing in their first point that the settlement amount as to the wrongful death claim should be restored because the affirmative defense raised only a comparison of the wrongful death claim against the personal injury claim. Janet and Linda argue in their second point that the defective pleading renders the trial court's finding as to the personal injury claim erroneous because there was "no recognized legal or factual basis" for that affirmative defense.

Although Discover posits a number of arguments that there is no reversible error as to the adequacy of the pleading, Discover does not contest that there is no legal or factual basis supporting a determination that the settlement was unreasonable based

29

solely on the ground cited in Discover's affirmative defense. Accordingly, we agree with Janet and Linda that the trial court erred in reducing the settlement amount solely based on a hypothetical and conclusory assertion that the amount of the two claims is "about the same."

Janet and Linda's first two points on appeal are granted. The granting of those first two points renders moot their third point on appeal, in which they argue that the trial court did not follow the mandated procedure in determining whether the settlement was reasonable.

**DISCOVER'S POINT III:  Error in award of post-judgment interest**

The amended judgment in the equitable garnishment action is dated September 3, 2013, and contains two categories of post-judgment interest. The first category is pursuant to Section 408.040.2 and is an award of interest dated from the September 29, 2011 consent judgment to the date of the amended judgment in the equitable garnishment action, September 3, 2013, for both the wrongful death and the personal injuries. Although not explicitly stated in the judgment, this award of interest is presumably against the insured, MHTC, obligating Discover to indemnify for that amount.  The second category is an award of interest on the equitable garnishment judgment pursuant to Section 408.040.1 and effective as of the date of the amended judgment, September 3, 2013, until satisfaction.

Discover does not challenge the award of post-judgment interest under Section 408.040.1, the second category of post-judgment interest awarded in this case.  In its third point on appeal, however, Discover argues that the trial court erred in granting Janet and

Linda's Rule 75.01 motion to amend the equitable garnishment judgment to award post-judgment interest dating back to the date of the September 30, 2011 consent judgment.

## Standard of Review

A determination of the date from which post-judgment interest is due is a question of law that we review *de novo*. *Lindquist v. Mid-Am. Orthopaedic Surgery, Inc*. 224 S.W.3d 593, 594-95 (Mo. banc 2007). In reviewing an issue *de novo*, we do not defer to the trial court. *Lake v. McCollum*, 324 S.W.3d 481, 484 (Mo. App. W.D. 2010) (citation omitted).

## Discussion

"The imposition of any interest from the date of judgment until payment is fixed and determined by statute." *Kelly v. Bass Pro Outdoor World, L.L.C.*, 426 S.W.3d 675, 678 (Mo. App. E.D. 2013) (citation omitted). Section 408.040.2 provides in part: "in tort actions, interest shall be allowed on all money due upon any judgment or order of any court from the date of judgment is entered by the trial court until full satisfaction." The purpose behind this statute "is to compensate a judgment creditor for the judgment debtor's delay in satisfying the judgment pending the judgment debtor's appeal." *Moore v. Bi-State Dev. Agency*, 132 S.W.3d 241, 243 (Mo. banc 2004). Read more broadly, "post-judgment interest is awarded on the theory that it is a penalty for delayed payment of the judgment." *Johnson v. BFI Waste Sys. of N. Am., Inc.*, 162 S.W.3d 127, 129 (Mo. App. E.D. 2005) (quoting *Green Acres Enters., Inc. v. Freeman*, 876 S.W.2d 636, 641 (Mo. App. W.D. 1994)).

Discover argues that the trial court erred in awarding post-trial interest because such an award was contrary to Rule 75.01 in that the amendment essentially amended the consent judgment, entered some two years before the judgment on the equitable garnishment action. Janet and Linda respond that post-judgment interest was appropriate because it accrues by operation of statute, not the express award of the trial court.

Our resolution of this point is governed by a recent Supreme Court decision holding that, even though mandated by statute, the award of post-judgment interest must be included in the original judgment to which it applies or in a timely amendment to that judgment. *McGuire v. Kenoma, LLC*, No. SC 93836, 2014 WL 5857534, *5 (Mo. banc Nov. 12, 2014). In *McGuire*, the trial court's initial judgment after a jury verdict awarding damages in tort did not include post-judgment interest or state an applicable interest rate as prescribed in Section 408.040. *Id.*, at *1. The plaintiffs did not file a timely post-trial motion to request the inclusion of post-judgment interest, seek to amend the judgment, or file an appeal claiming error in the judgment. *Id.* The judgment was affirmed on appeal without consideration of the un-raised issue of post-judgment interest. *Id.* After the mandate issued, the plaintiffs filed a motion in the trial court -- more than a year after the original judgment was entered -- requesting post-judgment interest. *Id.* In that motion, plaintiffs sought post-judgment interest by way of an amendment *nunc pro tunc* of the now final judgment so that the plaintiffs could receive interest retroactive to the date that judgment was entered on the verdict. The defendant appealed from the granting of that motion. *Id.* On appeal, our Supreme Court considered whether the trial court erred in entering its *nunc pro tunc* judgment on the ground that the failure to

32

determine the post-judgment interest rate was a substantive error, not a clerical error, such that *nunc pro tunc* was not an appropriate remedy. *Id.*

*McGuire* reversed the award of post-judgment interest. Its reasoning is necessarily grounded in *nunc pro tunc* jurisprudence. After *McGuire*, however, it is evident that an interest award pursuant to Section 408.040 must be made in the original judgment, pursuant to a timely amendment following a Rule 78.07 motion, pursuant to Rule 75.01, or even pursuant to a *nunc pro tunc* where there is evidence in the record that the trial court intended to include an interest rate or order payment of interest at the time the judgment was entered.[17] In this case, as in *McGuire*, Janet and Linda did not assert error or timely seek an amendment to the consent judgment in the prior action. It was improper for the trial court in the equitable garnishment action to amend the consent judgment to reflect interest not awarded therein.

Because the trial court's amended judgment erroneously awarded interest from the time of the consent judgment, some two years after that judgment was entered, we reverse judgment on that point.

This point is granted.

### CONCLUSION

The judgment of the trial court is affirmed in part and reversed and remanded in part with directions to reinstate the amount of the settlement pursuant to the consent

---

[17]*McGuire* did nothing to alter the trial court's ability to award post-judgment interest in a timely amended judgment. *Cf Good Hope Missionary Baptist Church v. St. Louis Alarm Monitoring Co*., 358 S.W.3d 528, 535 (Mo. App. E.D. 2012) (cited with approval in *McGuire* on related grounds). The *McGuire* Court additionally allows for a *nunc pro tunc* amendment relating to Section 408.040 interest where there is evidence in the record that actions taken in the amendment are corrections to indicate what was "actually done." 2014 WL 5857537, at *3.

judgment and to adjust the award of post-judgment interest in accordance with this opinion.

_____
Gary D. Witt, Judge

All concur