Jacqueline THIEMANN, Appellant,

v.

COLUMBIA PUBLIC SCHOOL DISTRICT, Respondent.

No. WD 72791.

Missouri Court of Appeals, Western District.

March 22, 2011.

Walter H. Bley, Jr., Columbia, MO, for appellant.

Wilbur L. Tomlinson, St. Louis, MO, for respondent.

Before Division Three: CYNTHIA L. MARTIN, Presiding Judge, JAMES E. WELSH, Judge and GARY D. WITT, Judge.

CYNTHIA L. MARTIN, Judge.

This case involves a dispute over whether a self-funded medical benefits plan was required to provide coverage for a dental surgical procedure performed in a hospital and under anesthesia. Jacqueline Thiemann ("Thiemann") appeals from a grant of summary judgment in favor of the Columbia Public School District ("CPSD") and from the denial of a cross-motion for sum-

mary judgment filed by Thiemann. Thiemann contends that the trial court erred because: (1) the plain terms of CPSD's Medical Benefit Plan (the "Plan") provided coverage for her procedure; and (2) in the alternative, the Plan is an ambiguous adhesion contract which must be construed against CPSD to afford coverage. We reverse and remand this case with instructions.

## Factual and Procedural History

We view the record and reasonable inferences therefrom in the light most favorable to the non-movant in this summary judgment proceeding. *C–H Bldg. Assocs., LLC v. Duffey*, 309 S.W.3d 897, 899 (Mo. App. W.D.2010) (citing *ITT Commercial Fin. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993)).

Thiemann is employed by CPSD as a secretary at Jefferson Junior High School. CPSD maintains the Plan for the benefit of "Covered Individuals" as that term is defined in the Plan. Thiemann is a Covered Individual. FMH Benefits Services ("FMH") is the third party administrator contracted by the Plan to administer claims.

Thiemann was referred by her dentist to Timothy T. Coyle, D.D.S., M.D., ("Dr. Coyle") because of difficulties she was having wearing an upper denture. Dr. Coyle concluded that Thiemann suffered from "severe atrophy of the edentulous alveolar ridge—maxilla." He advised that Thiemann needed a maxilla bone graft in order to permit installation of dental implants. Dr. Coyle wrote to FMH on January 16,

2009 and described Thiemann's condition and his recommended course of action. FMH advised that the treatment proposed by Dr. Coyle would not be covered under the Plan.

Thiemann's dentist, Donald L. Gossett, DDS, ("Dr. Gossett") contacted FMH on May 20, 2009 regarding coverage. He recommended the following procedures to address Thiemann's severe maxillary atrophy: (1) bone graft to maxilla[1] and bilateral maxillary sinus lifts; (2) harvesting bone from the left iliac crest[2]; and (3) endosteal implants.[3] On May 20, 2009, Dr. Gossett was advised by FMH that the proposed surgical procedures would not be covered under the Plan.

Nonetheless, on July 6, 2009, Dr. Gossett, with the assistance of Dr. Ronald Taylor ("Dr. Taylor"), performed the described surgical procedures. The parties agree that the procedures performed on Thiemann involved the "alveolar process."[4] The surgical procedures performed on Thiemann required her to be hospitalized, and were required to be performed under anesthesia.

FMH notified Thiemann that the surgery was not covered by her Plan and that she was responsible for her medical bills. Thiemann administratively appealed the denial of coverage. Thiemann's appeal was denied by letter dated November 18, 2009 ("Denial Letter"). The Denial Letter cited to the section of the Plan entitled LIMITATIONS ON MEDICAL BENEFITS (Article III.D) which provides, in pertinent part, that:

---

1. The maxilla is the bone which forms the upper jaw.

2. The iliac crest is a part of the pelvic bone.

3. Endosteal implants are implants, typically of pins, which anchor a tooth or other structure.

4. The alveolar process is a ridge which forms the border of the upper and lower jaws and contains the sockets of the teeth.

Benefits shall not be provided for or in connection with:

. . . .

10. Charges for dental procedures or oral surgery, unless specifically listed as a Covered Expense.

Though the phrase "Covered Expense" is capitalized, it is not a defined term in the section of the Plan entitled DEFINITIONS (Article II.A). However, in Article III.C of the Plan, entitled MEDICAL BENEFITS, paragraph 4 is entitled "Covered Expenses." In Article III.C.4, the Plan states:

Covered Expenses shall include only Reasonable and Customary Charges actually incurred by a Covered Individual while covered under the Plan, and which are not otherwise excluded as provided in the Plan, for the services and supplies listed herein which are Medically Necessary and which are prescribed by the attending Physician and required in connection with Medically Necessary therapeutic treatment of Injury or Illness.

Article III.C.4 is then followed by forty subparagraphs, enumerated "a" through "nn," which describe the "Covered Expenses" under the Plan. These subparagraphs include: "a. Hospital Services," and "q. Medical Dental Treatment." The Denial Letter relied on these two subparagraphs of Article III.C.4 to conclude that Thiemann's surgical procedures were not listed as covered, and that the Plan was, therefore, not obligated to provide coverage pursuant to Article III.D.10.

On January 11, 2010, Thiemann filed a petition against CPSD alleging breach of contract and vexatious refusal to pay.

On March 1, 2010, Thiemann filed a first amended petition which included count one for mandatory injunction and/or remedial writ and count two for vexatious refusal to

pay. Thiemann alleged damages of $35,142.36, consisting of $1,400 for anesthesia, $17,684.36 for the hospital, and $16,058.00 for Gossett. On the same day, the trial court granted a pending motion to dismiss the vexatious refusal count for failure to state a claim.[5]

Both CPSD and Thiemann filed motions for summary judgment. The trial court entered judgment ("Judgment") on June 29, 2010 granting CPSD's motion for summary judgment and denying Thiemann's motion for summary judgment. The Judgment also entered "final judgment" in favor of CPSD. Thiemann timely filed this appeal.

### Standard of Review

"We review a trial court's decision to grant a summary judgment motion *de novo*." *C–H Bldg. Assocs., LLC*, 309 S.W.3d at 899. We view the record and reasonable inferences therefrom in the light most favorable to the non-movant. *Id.* (citing *ITT Commercial Fin.*, 854 S.W.2d at 376).

■ The single issue on appeal is whether the Plan provided coverage for Thiemann's surgical procedures. "The interpretation of an insurance policy, and the determination whether coverage and exclusion provisions are ambiguous, are questions of law that this Court reviews *de novo*." *Burns v. Smith*, 303 S.W.3d 505, 509 (Mo. banc 2010). Though the parties contest the *amount* of benefits Thiemann would be entitled to recover if coverage for her procedure is provided by the Plan, the parties agree there are no genuine issues of material fact in dispute involving the facts necessary to permit determination of the coverage question presented in this appeal.

---

5. This ruling is not contested by Thiemann in this appeal.

■ Notwithstanding the clear declaration in *Burns* that our standard of review is *de novo* in disputes of this nature, CPSD contends that our standard of review should be "abuse of discretion." CPSD points to Article IV.B of the Plan which provides that:

> The Employer, or its designee, shall have the sole and absolute authority and discretion to interpret the terms of the Plan, *to determine all questions of fact* and determine the eligibility of individuals for coverage and benefits and their extent. All determinations and interpretations [sic] the Employer of its designee shall be final and binding on all parties unless such determination is arbitrary or capricious.

(Emphasis added.) CPSD contends that the discretionary authority described in Article IV.B of the Plan is common in non-governmental group benefit plans which are subject to the Employee Retirement Income Security Act ("ERISA"), and that similar language has been construed by federal courts to impose an arbitrary and capricious/abuse of discretion standard of review of coverage determinations.

We are not persuaded by CPSD's argument. First, CPSD concedes the Plan is not an ERISA plan, rendering federal cases construing discretionary authority language through that lens inapposite. Second, CPSD's argument ignores that the Plan, which CPSD drafted, provides in Article IV.E.7 that: "Missouri law shall govern interpretation of this Plan Document." Third, the discretionary authority language in Article IV.B expressly authorizes CPSD to make determinations of fact, not law. Though the language also affords CPSD the discretion "to interpret" the Plan and to "determine eligibility for coverage," CPSD cites to no Missouri authority suggesting that our standard of review in interpreting an insurance contract can be summarily modified by an insurer's insertion of a "discretionary authority" provision into a contract, particularly where the contract is not subject to ERISA, and where an insured has no meaningful ability to negotiate the contract's terms.

■ We will not deviate from our Supreme Court's directive that a trial court's decision to grant a summary judgment motion be reviewed *de novo*, and that the determination of coverage under an insurance policy be reviewed *de novo* as a question of law.[6]

## Point I

■ In point one, Thiemann contends that the trial court erred in granting CPSD's motion for summary judgment and in denying Thiemann's motion for summary judgment because the Plan plainly provided for coverage for Thiemann's surgical procedures. We agree.

■ We read a contract as a whole and determine the intent of the parties,

---

6. Even if we were to apply the "arbitrary and capricious" standard of review for which CPSD argues, it is unclear what effect, if any, that would have on our analysis. The Plan unambiguously provides that its interpretation is governed by Missouri law. As explained in the text, under Missouri law the interpretation of the language of an insurance policy is deemed to be an issue of law. Even in circumstances where Missouri courts apply an arbitrary and capricious review standard to administrative determinations, the agency's determination of legal issues is reviewed *de novo*. See, e.g., State ex rel. Jackson v. City of Joplin, 300 S.W.3d 531, 536 n. 2 (Mo.App. S.D.2009); M'Shoogy Animal Rescue v. Christmas, 298 S.W.3d 566, 568 (Mo.App. W.D.2009); Dir., Dep't of Pub. Safety v. Bishop, 297 S.W.3d 96, 98 (Mo.App. W.D.2009). Thus, application of an arbitrary and capricious review standard arguably would not alter our *de novo* review of CPSD's construction of the insurance policy's terms.

giving effect to that intent by enforcing the contract as written. *Mo. Emp'rs Mut. Ins. Co. v. Nichols*, 149 S.W.3d 617, 625 (Mo.App. W.D.2004). We give the language used in an insurance contract its plain and ordinary meaning. *Id.* "If, giving the language used its plain and ordinary meaning, the intent of the parties is clear and unambiguous, we cannot resort to rules of construction to interpret the contract." *Id.* Disagreement over the interpretation of the terms of a contract does not create an ambiguity. *Id.*

Here, CPSD relies on Article III. C.4(a)(4) and (q) to contend that Thiemann's surgical procedures are not therein described, and are, thus, not covered by the Plan in light of Article III.D.10 which provides that benefits shall not be provided under the Plan for or in connection with "charges for dental procedures or oral surgery, unless specifically listed as a Covered Expense."

Article III.C.4(a) provides:

a. Hospital Services:

. . . .

(4) *charges made by a Hospital for dental treatment or oral surgery for (A)* the repair of natural teeth within twenty four (24) months of a non-occupational accidental Injury or for *the following oral surgery procedures when inpatient hospitalization is Medically Necessary:* excision of impacted teeth, excision of tumors or cysts, incision and drainage of an abscess or cyst *or other oral surgery procedures not involving* tooth structure, *alveolar process,* or gingival tissue; *or (B)* a child under age 5, a person severely disabled or *a person with a medical or behavioral condition which requires hospitalization or general*

*anesthesia when such dental care is provided.*

(Emphasis added.)

Thiemann does not claim that she is entitled to coverage for her surgical procedures under Article III.C.4(a)(4)(A) ("Section A"). In fact, it is uncontested that Thiemann's surgical procedures resulted in (i) charges made by a Hospital for dental treatment or oral surgery, (ii) for an oral surgery procedure when inpatient hospitalization was Medically Necessary, but (iii) for an oral surgery procedure involving alveolar process. Thus, Thiemann's surgical procedures are plainly excluded from coverage under the Plan by Section A.

Thiemann argues that she is entitled to coverage for her surgical procedures under Article III.C.4(a)(4)(B) ("Section B"). Thiemann contends that her surgical procedures resulted in (i) charges made by a Hospital for dental treatment or oral surgery, (ii) for a person with a medical condition which requires hospitalization or general anesthesia when such dental care is provided.

Thiemann argues that the plain language of Section B requires coverage for her surgical procedures and affords eligibility distinct and independent from Section A. CPSD argues that Section A and Section B must be read together, and that Section B cannot be permitted to restore coverage for dental treatment or oral surgery charges expressly excluded from coverage by Section A. CPSD argues that the term "medical condition" in Section B necessarily refers to a medical condition other than the condition for which the dental treatment or oral surgery was required.

There are several problems with CPSD's argument. First, Section A and Section B are separated by the word "or." The word "or" is a disjunctive "which in its ordinary sense marks an alternative 'which generally corresponds to the word 'ei-

ther.' " *Council Plaza Redevelopment Corp. v. Duffey,* 439 S.W.2d 526, 532 (Mo. banc 1969) (citation omitted). Thus, "the word 'or' is typically used as a function word to indicate a choice between alternative things, states, or courses.... This conventional meaning of the word 'or' rings in harmony with our interpretation that [it] ... denotes alternative items in a list rather than a limiting phrase." *Gasconade Cnty. Counseling Servs., Inc. v. Mo. Dep't of Mental Health,* 314 S.W.3d 368, 376 (Mo.App. E.D.2010) (internal citations omitted). Read plainly and literally, therefore, Article III.C.4(a)(4) affords coverage for "charges made by a Hospital for dental treatment or oral surgery" as described in *either* Section A *or* Section B. Section B does not cross reference Section A, and thus does not provide that its independently defined basis for coverage is limited to charges not already excluded by Section A. Had CPSD intended this effect, it could easily have so provided.

Second, the term "medical condition" is not defined in the Plan. Thus, we afford the term "medical condition" its "plain and ordinary meaning, as typically found in the dictionary." *Derousse v. State Farm Mut. Auto. Ins. Co.,* 298 S.W.3d 891, 895 (Mo. banc 2009). "Medical" is defined in BLACKS LAW DICTIONARY 982 (6th ed.1990) as "[p]ertaining, relating or belonging to the study and practice of medicine, or the science and art of the investigation, prevention, cure, and alleviation of disease." "Condition" in the context intended by the Plan is defined in BLACKS LAW DICTIONARY 293 (6th ed.1990) as "[m]ode or state of being; state or situation; essential quality; property; attrib-

ute." Together, these common terms combine to refer to any state or situation relating to the prevention, cure, and alleviation of disease. Employing this plain and common meaning, it is not subject to reasonable contest that severe maxillary atrophy is a medical condition. Since Thiemann had this medical condition and required hospitalization or anesthesia "when such dental care" was provided (referring, necessarily, to the initial reference in Article III.C.4(a)(4) to "dental treatment or oral surgery"), it follows that Thiemann's surgical procedures are covered by Section B.

CPSD argues that this construction of the Plan will lead to an absurd result by affording coverage for oral surgery involving alveolar process even though that oral surgery is expressly excluded from coverage by Section A. We do not agree. Section A does exclude oral surgery involving alveolar process "when inpatient hospitalization is Medically Necessary." Section A does not address or mention, however, general anesthesia. Inpatient hospitalization does not necessarily imply the need for general anesthesia. Here, there is no dispute that Thiemann's surgical procedures required general anesthesia. Section B, again using the disjunctive "or," provides coverage for medical conditions requiring "hospitalization *or* general anesthesia" when the dental care is provided. Since an oral surgical procedure requiring anesthesia, including alveolar process, is not plainly excluded by Section A, we are not compelled to read Section A as in inherent conflict with Section B as CPSD suggests.[7] "Missouri ... strictly con-

---

**7.** Had Thiemann only required hospitalization, and not general anesthesia, for her surgical procedures, we would have been faced with the conflict that her oral surgery involving alveolar process when inpatient hospitalization was required would have been exclud-

ed under Section A, but included within the coverage described in Section B. In that case, we would necessarily find an ambiguity, given use of the disjunctive "or" between Section A and Section B. Under the doctrine of *contra proferentum,* we would have been required to

strues exclusionary clauses against the drafter, who also bears the burden of showing the exclusion applies." *Burns,* 303 S.W.3d at 511.

CPSD's construction of the Plan would necessarily require us to read the term "medical condition" as limited to medical conditions other than the one for which oral surgery was performed. As we have noted, however, the plain meaning of "medical condition," even when read in the context of Section B, does not permit nor suggest such a limitation. Had CPSD intended Section B's reference to medical condition to refer to a condition other than the condition requiring oral surgery it could have easily so provided. It did not. Given our charge to construe exclusionary provisions in an insurance policy strictly against an insurer, we are not permitted to rewrite the Plan to, in effect, insert an exclusion that is not expressed.

We reach the same conclusion with respect to CPSD's reliance on Article III. C.4.q which relates to coverage for "Medical Dental Treatment." This provision, though somewhat similar to Article III. C.4(a)(4), is written in a structurally (and materially) different manner. Article III. C.4(q) provides:

> q. *Medical Dental Treatment: Charges for dental services and oral surgery* related to treatment of sound, natural teeth injured in an accident provided treatment is rendered within twenty-four (24) months of the accident and *for the following oral surgery procedures:* excision of impacted teeth, excision of tumor or cyst, incision and drainage of an abscess or cyst *or any other surgical procedure not involving* tooth structure, *alveolar process* or gingival tissue; *and charges for general anesthesia and office charges by a Dentist when dental care is rendered* to a child under age 5, to a person who is severely disabled or *to a person with a medical or behavioral condition which requires hospitalization or general anesthesia when such dental care is provided.*

(Emphasis added.)

Unlike Article III.C.4(a)(4), which addresses *one* category of covered charges ("charges made by a Hospital for dental treatment or oral surgery") and *two* circumstances where such covered charges might be incurred (Section A and Section B), Article III.C.4(q) describes coverage for *two* different categories of charges. First, the provision provides coverage for "charges for dental services and oral surgery." In describing these charges, Article III.C.4(q) excludes such charges incurred in connection with "other surgical procedure not involving ... alveolar process." Notably, this portion of Article III. C.4(q) makes no reference to inpatient hospitalization, suggesting an intent to cover "dental services and oral surgery" in an outpatient setting, even in a dental office, in contrast to Section A where identically described "charges" and "services" require medically necessary inpatient hospitalization to secure coverage. Thus, this portion of Article III.C.4(q) would have no bearing on determining coverage for the "dental treatment and oral surgery" charges incurred by Thiemann because in her case, inpatient hospitalization was required, necessitating reference to Article III.C.4(a)(4)(A), and not to Article III. C.4(q).

Article III.C.4(q) continues with a semi-colon followed by the word "and," and then describes the second category of charges for which coverage is provided—"charges

resolve the ambiguity in favor of Thiemann. *Bodziony v. Blue Cross and Blue Shield of Kansas City,* 332 S.W.3d 900, 901–02 (Mo. App.W.D.2011) (citing *Burns,* 303 S.W.3d at 511).

for anesthesia and dental office charges." These charges are covered "when dental care is rendered ... to a person with a medical ... condition *which requires hospitalization or general anesthesia when such dental care is provided.*" (Emphasis added.) For the reasons we have previously discussed, the plain reading of this portion of Article III.C.4(q) would afford Thiemann coverage for any "anesthesia and dental office charges" she incurred in connection with her surgical procedures, as she required hospitalization and anesthesia for her dental care.

We conclude that the plain meaning of the language employed in the Plan afforded Thiemann coverage for her surgical procedures as a matter of law. The trial court erroneously concluded that the Plan did not afford coverage. The trial court thus erroneously granted summary judgment in favor of CPSD, erroneously denied Thiemann's motion for summary judgment, and erroneously entered a final judgment in favor of CPSD. Thiemann's Point One is granted.

Because we so conclude, we need not address Thiemann's Point Two which argues in the alternative that the Plan is ambiguous and must be construed in her favor to afford coverage.[8]

■ Thiemann requests not only that the denial of her motion for summary judgment be reversed, but that we exercise our authority to enter judgment in her favor on her motion for summary judgment. "Generally, the denial of a summary judgment is not a final order and, therefore, is not appealable." *Estate of Downs v. Bugg*, 242 S.W.3d 729, 732 (Mo. App. W.D.2007). Where the issues raised in a cross-motion for summary judgment motion are directly related to grounds asserted in an opposing motion for summary judgment, however, we are not only permitted to entertain, in effect, an appeal from the denial of the cross-motion for summary judgment, but may also enter judgment on the denied motion for summary judgment if our declaration of the law would so require. *Id., see* Rule 84.14.

Our legal determination today that coverage should have been afforded Thiemann under the Plan will require the trial court on remand to find liability in favor of Thiemann with respect to her claims addressing the availability of coverage. As we previously observed, however, there are genuine issues of fact in dispute based on our review of the summary judgment pleadings with respect to the amount of coverage that should be afforded Thiemann, and thus with respect to Thiemann's damages. We are unable, therefore, to enter final judgment in Thiemann's favor, notwithstanding our finding that she is entitled to coverage under the Plan as a matter of law.

### Conclusion

The Judgment of the trial court is reversed and ordered vacated. On remand, the trial court shall enter judgment in favor of Thiemann and against CPSD on the issue of Thiemann's entitlement to coverage under the Plan, and shall conduct such proceedings as are necessary, consistent with this opinion, to determine the damages and/or other relief Thiemann is entitled to recover from CPSD.

All concur.

---

8. We also do not address the argument advanced by Thiemann in the argument portion of her discussion of Point Relied On One that the Plan is a contract of adhesion, an argument that was not, in any event, preserved for appellate review as it was not included in either of Thiemann's Points Relied On. Rule 84.04(e).