

# In the
# Missouri Court of Appeals
## Western District

MENDOTA INSURANCE COMPANY,    )
                                      )
           **Respondent,**            )    **WD77483 Consolidated with**
                                        )    **WD77484**
**v.**                                           )
                                        )    **OPINION FILED:  March 24, 2015**
DIANE LAWSON, ET AL.,            )
                                        )
           **Appellants.**              )

**Appeal from the Circuit Court of Jackson County, Missouri**
The Honorable Justine E. Del Muro, Judge

Before Division Three:  Victor C. Howard, Presiding Judge, James E. Welsh, Judge and
Gary D. Witt, Judge

Diane Lawson ("Lawson") and Heather Burlingame ("Burlingame") appeal from the trial court's summary judgment rulings in favor of Mendota Insurance Company ("Mendota") arising out of an action for wrongful death.  In the proceedings below, based on stipulated facts, the trial court found that a personal automobile insurance policy between Lawson's deceased husband and Mendota was clear and unambiguous, that the policy was valid and enforceable, and that Mendota had no duty to defend or indemnify.  The trial court thus denied Lawson's and Burlingame's motions for summary judgment, granted Mendota's motion for summary judgment, and granted Mendota's motion to

dismiss Lawson's counter-claim. Lawson and Burlingame appeal these rulings. We affirm.

## FACTUAL AND PROCEDURAL HISTORY

The key facts are stipulated by the parties. On June 3, 2012, Terry W. Lawson ("Terry")[1] and Jeffery King ("King") were killed in an automobile accident when a 2001 Chevrolet S-10 pickup truck (the "Chevrolet"), owned and operated by Terry, struck a ditch and overturned. Terry's wife, Lawson, is King's natural mother. She filed a wrongful death action against Terry's personal representative, Burlingame.[2] Lawson alleged that Terry's negligent conduct caused King's wrongful death. Lawson obtained a judgment of more than three million dollars finding that Terry was negligent and that the negligence caused King's death.

Two automobiles, a 2005 Dodge Stratus (the "Dodge") and a 2006 Pontiac GT (the "Pontiac"), were listed in the declarations section of Lawson's policy with Mendota (the "Policy"). The Policy provided liability coverage of $25,000 per person and $50,000 per occurrence for those two vehicles. Additionally, the Chevrolet was a declared vehicle in a separate policy that Terry held with Progressive Casualty Insurance Company ("Progressive"). The parties settled regarding all matters concerning the Progressive policy, and Progressive is not part of this appeal.

Mendota brought a declaratory judgment action seeking a declaration of its rights and obligations under the Policy. *Inter alia*, Mendota sought a judicial declaration that

---

[1] We refer to Terry by his first name to distinguish him from his wife, the named party. No disrespect or familiarity is intended.

[2] Burlingame was substituted for Douglass F. Noland as Terry's personal representative. The substitution does not affect the merits of the case.

no liability coverage exists for any wrongful death claims, that the policy exclusions are valid and enforceable, that the policy exclusions apply to the facts of this case, that Mendota has no duty to defend the personal representative of Terry's estate, and that Mendota has no duty to indemnify the personal representative of Terry's estate.

Lawson filed a counter-claim against Mendota under Section 379.200[3] for bad faith failure to defend Burlingame in the underlying action that led to the judgment of more than three million dollars because Mendota had agreed to defend Burlingame only under a reservation of rights. Lawson alleged that Mendota is obligated to indemnify Terry's personal representative under the policy for damages flowing from its breach of the duty to defend and provide coverage.[4]

As noted above, Mendota, Lawson, and Burlingame each filed motions for summary judgment based on the stipulated facts and the terms of the Policy, and Mendota filed a motion to dismiss Lawson's counter-claim. The trial court granted Mendota's motion for summary judgment, overruled Lawson's and Burlingame's motions for summary judgment, and dismissed Lawson's counter-claim.

## Pertinent Policy Language

The following provisions from the Policy are at issue:

---

[3] All statutory references are to RSMo 2000 as currently supplemented unless otherwise indicated.

[4] Trial court rulings on several additional pleadings in favor of Mendota are not part of this appeal: *inter alia*, Lawson filed a cross-claim against Burlingame for equitable garnishment as part of the same pleading as her counter-claim against Mendota. Burlingame filed an answer to Lawson's cross-claim for equitable garnishment and a counter-claim against Mendota for bad faith. Burlingame's counter-claim alleged *inter alia* that Mendota had had the opportunity to control and manage litigation surrounding the underlying accident, that it did not agree to defend or indemnify Burlingame, and that it wrongfully denied coverage and failed to settle Lawson's claims. Burlingame sought damages for the bad-faith denial of a defense without reservation and indemnity and for its bad-faith refusal to settle, actual damages, punitive damages, and costs.

3

**DEFINITIONS**

J.       "Your covered auto" means:

     1.       Any vehicle shown in the Declarations.

     2.       A "newly acquired auto".[5]

* * * *

**LIABILITY**

* * * *

**INSURING AGREEMENT**

A.       We will pay damages for "bodily injury" (Coverage A) or "property damage" (Coverage B) for which any "insured" becomes legally responsible because of an auto accident. . . .

* * * *

B.       "Insured" as used in these coverages means:

     1.       You for the ownership, maintenance or use of any auto or "trailer".[6]

* * * *

---

[5] This definition of "Your covered auto" is from the "Missouri Specialty Automobile Amendatory Endorsement - Personal Auto Policy," which is located after the body of the policy that contains the signatures of the "Secretary" and "President" of Mendota. The definition of "Your covered auto" in the main body of the Policy differs slightly as follows: "2. Any of the following types of vehicles on the date you become the owner: a. a private passenger auto; or b. a pickup or van." The parties raise no issue of ambiguity relating to the difference between the definition that is part of the main body of the policy and the definition in the "Missouri Specialty Automobile Amendatory Endorsement - Personal Auto Policy."

[6] Again, this definition of "insured" is from the "Missouri Specialty Automobile Amendatory Endorsement - Personal Auto Policy." The definition of "Insured" in the main body of the Policy differs slightly as follows: "'Insured' as used in these coverages means: 1. You or any 'family member' for the ownership maintenance or use of any auto or 'trailer'". Again, the parties raise no issue of ambiguity relating to the difference between the definition that is part of the main body of the policy and the definition in the lengthy "Missouri Specialty Automobile Amendatory Endorsement - Personal Auto Policy."

**EXCLUSIONS**

\* \* \* \*

B.     We do not provide Liability Coverages for the ownership, maintenance or use of:

>     2.     Any vehicle, other than "your covered auto", which is:
>
>         a.     owned by you; or
>
>         b.     furnished or available for your regular use.

\* \* \* \*

## OVERVIEW OF ISSUES

Lawson and Burlingame bring three points of error, the first two asserting that the trial court erred in finding the Policy valid and enforceable and granting summary judgment in favor of Mendota and denying Lawson's and Burlingame's motions for summary judgment and dismissing Lawson's counter-claim.  In their first point, more specifically, the appellants argue that the Policy's owned-auto exclusion violates the Missouri Motor Vehicle Financial Responsibility Law ("MVFRL") because the Policy designates that coverage is granted with respect to the Chevrolet and because Section 303.190.2 accordingly requires that the Policy provide coverage.  In their second point, the appellants argue that the Policy is ambiguous because when the insuring agreement and the owned-auto exclusion are considered together, the Policy purports to provide coverage to the named insured for the use of any auto but then attempts to take away that coverage.  In the third point, the appellants argue that the trial court erred in dismissing Lawson's counter-claim because it states a claim upon which relief can be granted.

5

## POINTS I and II

We address the issues out of order, first resolving the threshold matter of whether the Policy's insuring agreement in the Liability portion applies to this accident. We then address whether Exclusion B applies (Point II) and whether the MVFRL applies (Point I).

## Standard of Review[7]

Our Supreme Court has set forth our standard for reviewing summary judgment rulings:

> Summary judgment is appropriate only when the moving party demonstrates that there is no genuine dispute as to the facts and that the facts as admitted show a legal right to judgment for the movant. The movant bears the burden of establishing both a legal right to judgment and the absence of any genuine issue of material fact required to support the claimed right to judgment. The propriety of summary judgment is purely an issue of law, and this Court's review is essentially *de novo*. As the trial court's judgment is founded on the record submitted and the law, an appellate court need not defer to the trial court's order granting summary judgment.

*Bob DeGeorge Assoc.'s, Inc. v. Hawthorn Bank*, 377 S.W.3d 592, 596 (Mo. banc 2012) (quoting *ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 380 (Mo. banc 1993)) (citations and internal quotation marks omitted).

Additionally, the interpretation of an insurance policy is a question of law that we also determine *de novo*. *Seeck v. Geico Gen. Ins. Co.*, 212 S.W.3d 129, 132 (Mo. banc 2007) (citations omitted); *Blumer v. Auto. Club Inter-Ins. Exch.*, 340 S.W.3d 214, 218 (Mo. App. W.D. 2011) (holding that where "resolution of the case involves the

---

[7] Although the general rule is that an order denying a motion for summary judgment is not appealable, this court can review such an order when the merits of the denied motion are "intertwined with the propriety of an appealable order granting summary judgment to another party." *Eldridge v. Columbia Mut. Ins.*, 270 S.W.3d 423, 425-26 (Mo. App. W.D. 2008). Here, the merits are intertwined and the denials of Lawson's and Burlingame's motions for summary judgment are properly before this court.

interpretation of an insurance contract, we give no deference to the circuit court as contract interpretation is a question of law").

## General Principles of Interpretation

Given that the issue is solely one of interpretation of an insurance policy, we note at the outset that "[w]e read a contract as a whole and determine the intent of the parties, giving effect to that intent by enforcing the contract as written." *Thiemann v. Columbia Pub. Sch. Dist.*, 338 S.W.3d 835, 840 (Mo. App. W.D. 2011) (citation omitted). Put another way, "[w]e do not interpret insurance policy provisions in isolation but rather evaluate the policy in terms of a whole." *Durbin v. Deitrick*, 323 S.W.3d 122, 125 (Mo. App. W.D. 2010 (citing *Ritchie v. Allied Prop. & Cas. Ins. Co.*, 307 S.W.3d 132, 135 (Mo. banc 2009)).

In so doing, we give the language in an insurance contract its plain and ordinary meaning. *Thiemann*, 338 S.W.3d at 840 (citation omitted). "If, giving the language used its plain and ordinary meaning, the intent of the parties is clear and unambiguous, we cannot resort to rules of construction to interpret the contract." *Id*. Mere disagreement over the interpretation of the terms of a contract does not create an ambiguity. *Id*. In examining whether the language used in an insurance policy is ambiguous, the language is normally considered in the light in which it would normally be understood by the *lay person* who bought and paid for the policy. *Blumer,* 340 S.W.3d at 218 (citation omitted).

If the policy does not contain an ambiguity, the insurance contract will be enforced as written. *Fanning v. Progressive N.w. Ins. Co.*, 412 S.W.3d 360, 364 (Mo. App. W.D.

7

2013) (citing *Rodriguez v. Gen. Accident Ins. Co. of Am.*, 808 S.W.2d 379, 382 (Mo. banc 1991)). Where an ambiguity exists, we construe the policy language against the insurer. *Blumer*, 340 S.W.3d at 218 (citation omitted). "An ambiguity exists when there is duplicity, indistinctness, or uncertainty in the meaning of the language in the policy." *Seeck*, 212 S.W.3d at 132. "This rule is especially applicable where insurance is first 'granted' and is then followed by provisions limiting or avoiding liability." *Rice v. Shelter Mut. Ins. Co.*, 301 S.W.3d 43, 47 (Mo. banc 2009) (citation omitted). When determining whether an ambiguity exists, "'[w]ords or phrases in an insurance contract must be interpreted by the court in the context of the policy as a whole and are not to be considered in isolation.'" *Fanning*, 412 S.W.3d at 364 (citing *Miller v. Ho Kun Yun*, 400 S.W.3d 779, 784 (Mo. App. W.D. 2013)).

"To test whether the language used in the policy is ambiguous, the language is considered in the light in which it would normally be understood by the lay person who bought and paid for the policy." *Fanning*, 412 S.W.3d at 364 (citation omitted). We apply "the meaning which would be attached by an ordinary person of average understanding if purchasing insurance" and we resolve "ambiguities in favor of the insured." *Id.* (citing *Seeck*, 212 S.W.3d at 132).

Ambiguities are construed in favor of the insured because:

(1) insurance is designed to furnish protection to the insured, not defeat it; ambiguous provisions of a policy designed to cut down, restrict, or limit insurance coverage already granted, or which introduce exceptions or exemptions, must be strictly construed against the insurer; and (2) as the drafter of the policy, the insurance company is in the better position to remove the ambiguity from the contract.

*Fanning*, 412 S.W.3d at 364 (citing *Golden Rule Ins. Co. v. R.S.*, 368 S.W.3d 327, 334 (Mo. App. W.D. 2012)).

## Insuring Agreement

We first address whether the accident falls within the purview of the insuring agreement. The appellants argue that the Chevrolet meets the broad definition of "any auto," while Mendota argues that "coverage for liability in the [Chevrolet] is not afforded under the Mendota Policy because the [Chevrolet] is not listed on the Declarations; it does not qualify as a 'covered auto'" [sic].

"[T]he insured bears the burden of proving coverage under an insurance policy." *Fischer v. First Am. Title Ins. Co.*, 388 S.W.3d 181, 187 (Mo. App. W.D. 2012) (citation omitted). However, "[i]n general, an insurance policy is a contract to afford protection to an insured and will be interpreted, if reasonably possible, to provide coverage." *Shiddell v. Bar Plan Mut.*, 385 S.W.3d 478, 483 (Mo. App. W.D. 2012) (citation omitted). As noted above, the Policy's insuring agreement for Liability coverage states:

> We will pay damages for "bodily injury" (Coverage A) or "property damage" (Coverage B) for which any "insured" becomes legally responsible because of an auto accident. . . .

And

> "Insured" as used in these coverages means:

> 1. You for the ownership, maintenance or use of ***any auto*** or "trailer" . . .

(Emphasis added.)

9

Given that under the insuring agreement, Mendota provides liability coverage for the "insured's" use of "any auto," the only question in our initial determination of coverage is whether the Chevrolet fits the description of being "any auto."

Even though "your covered auto" is defined in the policy, "any auto" is not a defined term in this policy. When "a policy does not define a term, a court is free to give the term a reasonable construction." *Fischer*, 388 S.W.3d at 187 (citation omitted). In the process, "the trial court must consider the whole document and the natural and ordinary meaning of the language." *Id.* (citation omitted).

Here, in according the Policy language its plain and ordinary meaning, one need not consult a dictionary to understand that a reasonable layperson would read "any auto" to include coverage of "any auto," which necessarily encompasses the Chevrolet. In so holding, we note that a determination that "any auto" means only the two vehicles listed on the declarations page would render superfluous or ambiguous the term "any vehicle" in Exclusion B. That exclusion states that there is no liability coverage for "***Any vehicle***, other than 'your covered auto' that is . . . owned by you . . . ." (emphasis added). If, as Mendota argues, there is no liability coverage for any vehicles aside from the Dodge and the Pontiac, there would be no need for that exclusion, and more specifically, no need for the term "any vehicle" to be included in that exclusion.[8]

---

[8] The policy examined in *Eldridge* contained some of the some phrasing in its definition of "insured" as in the case at bar. 270 S.W.3d at 426-27. The expanded definition in *Eldridge* is a clear example of the insurer's intent to contrast the undefined term "any auto" with the defined term "your covered auto." The definition of "insured" in *Eldridge* was:
  1. You for the ownership, maintenance or use of ***any auto*** or "trailer".
  2. Any "family member":
     a. Who does not own an auto, for the maintenance or use of any auto or "trailer".
     b. Who owns an auto, but only for the use of "your covered auto"

This plain and ordinary reading of the Policy language is additionally in accord with the industry's custom of providing coverage to occasional or incidental use of vehicles other than those listed on the declarations page. *See Dutton v. Am. Family Mutual Ins. Co.*, No. SC 94075, 2015 WL 468715, *3 (Mo. banc Feb. 3, 2015) (quoting *State Farm Mut. Auto. Ins. Co. v. W. Cas. & Sur. Co.*, 477 S.W.2d 421, 424 (Mo. banc 1972), which noted that the purpose of "non-owned auto" or "drive other cars" provisions is to cover occasional or incidental use of other cars without payment of additional premium but to exclude coverage for habitual use of other cars). *See also Shelter Mut. Ins. Co. v. Sage*, 273 S.W.3d 33, 39 (Mo. App. W.D. 2008).

Given that an insurance policy is interpreted, if reasonably possible, to provide coverage, and in light of the insurance industry's custom of providing some liability coverage of vehicles not included in the declarations page, we hold that the coverage of the Chevrolet was within the purview of the insuring agreement in the liability portion of the Mendota policy.

### Exclusion B

Having determined that the Chevrolet was within the purview of the liability insuring agreement of the Policy, we turn to Exclusion B. The meat of the appellants' second point on appeal is that Exclusion B is ambiguous when read with the insuring

---

3. Any person using "your covered auto"...
4. ....
5. ***For any auto or "trailer", other than "your covered auto"***, any other person or organization but only with respect to legal responsibility for acts or omissions of you or any "family member" for whom coverage is afforded under this Part.

270 S.W.3d at 426-27 (emphases added).

11

agreement because the contract "purports to provide coverage to the named insured for the use of any auto but then attempts to take away that coverage" by means of the owned-auto exclusion.

Missouri strictly construes exclusionary clauses against the drafter. *Manner v. Schiermeier*, 393 S.W.3d 58, 62 (Mo. banc 2013) (citation omitted). "The burden of showing that an exclusion to coverage applies is on the insurer." *Id*. The *Manner* court explicitly noted in the context of a summary judgment, which is the procedural juncture we face here, that the "burden was on the insurers to prove" that an exclusion applied. *Id*. at 60. Additionally, "[i]n Missouri, this rule is more rigorously applied in insurance contracts than in other contracts." *Fanning*, 412 S.W.3d at 364 (citing *Long v. Shelter Ins. Co.*, 351 S.W.3d 692, 696 (Mo. App. W.D. 2011)).

As our Supreme Court recently reiterated, however, the mere presence of an exclusion does not render an insurance policy ambiguous. *Floyd-Tunnell v. Shelter Mut. Ins. Co.*, 439 S.W.3d 215, 221 (Mo. banc 2014). The court noted:

> Insurance policies customarily include definitions that limit words used in granting coverage as well as exclusions that exclude from coverage otherwise covered risks. While a broad grant of coverage in one provision that is taken away by a more limited grant in another may be contradictory and inconsistent, the use of definitions and exclusions is not necessarily contradictory or inconsistent. . . . ***Definitions, exclusions, conditions and endorsements are necessary provisions in insurance policies***. If they are clear and unambiguous within the context of the policy as a whole, they are enforceable.

*Id*. (citation omitted; emphasis added).

As reproduced above, Exclusion B states:

> We do not provide Liability Coverages for the ownership, maintenance or use of:
>
> > 2.     Any vehicle, other than "your covered auto", which is:
> >        a.     owned by you; or
> >        b.     furnished or available for your regular use.

As noted above, the purpose of "non-owned auto" or "drive other cars" provisions is to cover occasional or incidental use of other cars without payment of additional premium but to exclude coverage for habitual use of other cars. Non-owner exclusions thus "protect an insurer from a situation where an insured could purchase one policy for a described vehicle and be covered by the same policy without qualification while operating any and all other automobiles under his control or available for his use." *Allstate Ins. Co. v. Ibrahim*, 243 S.W.3d 452, 457 (Mo. App. E.D. 2007) (citation omitted).

Here, in examining the appellants' brief, we note that Lawson and Burlingame point to no words or phrasing in Exclusion B in arguing that it is ambiguous. Nor do they argue that the Chevrolet meets the Policy definition of "your covered auto" so as to fall outside of the reach of the exclusion. Rather, they argue broadly that the exclusion is ambiguous because it "attempts to take away the promised coverage with respect to vehicles owned by Terry Lawson or furnished or available for his regular use." Without any particular words or phrase to examine, we hold that Exclusion B clearly and unambiguously informs the policyholder that there is no coverage for any vehicle owned by the insured other than "your covered auto."

Lawson's and Burlingame's second point is denied.

## MVFRL

Lawson and Burlingame argue in their first point that the trial court erred in ruling in favor of Mendota because Exclusion B violates the MVFRL, which requires minimal coverage. The appellants rely on rationale recently rejected by our Supreme Court in *Dutton*. The *Dutton* holding disposes of the appellants' arguments: where a policy clearly and unambiguously excludes coverage for the insured's use of an owned vehicle not designated as a covered vehicle in the policy, the MVFRL does not require the statutory minimal coverage. 2015 WL 468715, at *4.

This point is denied.

## POINT III

In their third point on appeal, Lawson and Burlingame argue that the trial court erred in dismissing her counter-claim against Mendota because Lawson stated a claim upon which relief could be granted under Section 379.200.

### Standard of Review

We review a trial court's grant of a motion to dismiss *de novo*. *Ward v. W. Cnty. Motor Co.*, 403 S.W.3d 82, 84 (Mo. banc 2013) (citation omitted). When we review "the dismissal of a petition for failure to state a claim, the facts contained in the petition are assumed true and construed in favor of the plaintiffs." *Id.* "If the petition sets forth any set of facts that, if proven, would entitle the plaintiffs to relief, then the petition states a claim." *Id.*

14

**Discussion**

In an action for equitable garnishment under Section 379.200, a plaintiff "stands in the shoes of the insured, and his rights are no greater and no less than the insured's would have been in an action between the insured and the insurer" on the policy. *Carroll v. Mo. Intergov'l Risk Mgmt. Ass'n*, 181 S.W.3d 123, 126 (Mo. App. W.D. 2005) (citations omitted). Having determined *supra* that the policy effectively excludes coverage of the Chevrolet, any argument for equitable garnishment must fail as well. *See Payne v. Grinnell Mut. Reinsurance Co.*, 716 F.3d 487, 491 (8th Cir. 2013).

This point is denied.

**CONCLUSION**

The judgment of the trial court is affirmed.

_____
Gary D. Witt, Judge

All concur