Darnita RIGGINS, individually and on behalf of all others similarly situated, Plaintiff,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Defendant.

No. 2:14–cv–04171–SRB

United States District Court, W.D. Missouri, Central Division.

Signed November 17, 2016

Christopher E. Roberts, David T. Butsch, Butsch Roberts & Associates LLC, Joe D. Jacobson, Jacobson Press & Fields PC, Clayton, MO, for Plaintiff.

Daniel David Williams, Boulder, CO, Jennifer K. Harrison, Ll. Rhyddid Watkins, Margaret Young Cass, Michael S.

McCarthy, Denver, CO, Jeffrey A. Kennard, Lisa Bolliger, James D. Griffin, Scharnhorst Ast Kennard Griffin, PC, Kansas City, MO, for Defendant.

## ORDER

Stephen R. Bough, United States District Judge

Before the Court is Defendant's Motion for Summary Judgment. (Doc. #160). For the reasons stated below, the motion is DENIED.

Plaintiff Darnita Riggins brings this action on behalf of herself and seeks to represent a class of similarly-situated individuals in Missouri who, like her, received an Actual Cash Value ("ACV") payment from Defendant American Family Mutual Insurance Company for physical loss or damage to their residences or other structures that included a depreciation factor applied to the cost of labor. Plaintiff claims that the plain language of her homeowners' policy does not allow Defendant to depreciate labor costs in calculating ACV, and Defendant therefore breached its agreement with her and potential class members whose policies included the same language. Plaintiff further claims this action is appropriate for class resolution, which is an issue that will be decided separately based on Plaintiff's pending motion for class certification. By the present motion, however, Defendant asks the Court to grant summary judgment in its favor and find that Plaintiff does not have standing to state her individual claims because her ACV payment, even though it included depreciated labor costs, also included an ACV component that estimated repair or replacement of her screens to be higher than what she later paid to repair or replace the screens, and this surplus more than offset any labor cost depreciation. The Court finds that the contract language at issue requires Defendant to pay ACV without labor costs being depreciated regardless of whether the insured later repairs or replaces at all and regardless of whether the insured later repairs or replaces for less than the estimate included in an ACV calculation.

## I. Legal Standard

A moving party is entitled to summary judgment on a claim "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine dispute over a material fact is one "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

"Summary judgment is appropriate if the evidence, viewed in the light most favorable to the [nonmovant] and giving [the nonmovant] the benefit of all reasonable inferences, shows there are no genuine issues of material fact and [the movant] is entitled to judgment as a matter of law." *Price v. N. States Power Co.*, 664 F.3d 1186, 1191 (8th Cir. 2011) (citation omitted). "Once the moving party has made and supported their motion, the nonmoving party must proffer admissible evidence demonstrating a genuine dispute as to a material fact." *Holden v. Hirner*, 663 F.3d 336, 340 (8th Cir. 2011) (citation omitted). A party opposing summary judgment "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." *Thomas v. Corwin*, 483 F.3d 516, 526–27 (8th Cir.

2007) (citation omitted). Summary judgment should not be granted if a reasonable jury could find for the nonmoving party. *Woodsmith Publ'g Co. v. Meredith Corp.*, 904 F.2d 1244, 1247 (8th Cir. 1990) (citing *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505).

## II. Background

Many of the facts relied on by the parties are uncontroverted. Considering the parties' factual positions as well as the record made at the in-person hearing held on October 28, 2016, in the light most favorable to Plaintiff as the non-moving party, the Court finds the relevant facts to be as follows:

Plaintiff is a St. Louis homeowner and longtime American Family policyholder, owning policies covering both her primary home and a separate rental residence. Plaintiff's homeowners' policy on her primary residence provides in relevant part:

   b. Buildings Which Have a Permanent Foundation and Roof Insured at 100% of Replacement Cost.

   Buildings Insured at 100% of replacement cost will be settled at replacement cost, subject to the following:

(1) Replacement Cost.

If at the time of loss, the Increased Building Limit Coverage as provided under the Supplementary Coverages—Section I applies, we will pay the cost to repair the damaged portion or replace the damaged building, provided repairs to the damaged portion or replacement of the damaged building are completed, but not exceeding the smallest of:

(a) the cost to replace the damaged building with like construction for similar use on the same premises;

(b) the amount actually and necessarily spent for repair of the damaged portion or replacement of the damaged building; or

(c) 120% of the limit applying to the damaged building.

(2) Actual Cash Value.

If at the time of loss, the Increased Building Limit Coverage as provided under the Supplementary Coverages—Section I applies and the building is not repaired or replaced, we will pay the actual cash value at the time of loss of the damaged portion of the building up to the limit applying to the building.

(Doc. #161–2, p. 20). The policy defines ACV as "the amount it costs to repair or replace property with property of like kind and quality less depreciation for physical deterioration and obsolescence." (Doc. #161–2, p. 25). The policy also provides that an insured may apply for an additional payment should the cost to repair or replace exceed the ACV payment:

d. Procedures to Claim Replacement Coverage.

If you receive an actual cash value settlement for damaged property covered by replacement coverage and you have not reached your limit, you may make a further claim under this condition for replacement cost, provided repairs to the damaged portion or replacement of the damaged building are completed within one year of the date of loss.

(Doc. #161–2, p. 21). The policy does not provide that an ACV payment will be reduced and does not require the insured to return any portion of an ACV payment should the insured subsequently repair or replace the property for less than the ACV payment amount.

On April 28, 2012, a hail storm damaged the roof, gutters, screens, and solar lights of Plaintiff's residence. Three weeks later,

Plaintiff made a claim under her home-owners' policy for the damage. On or around two days later, Defendant paid Plaintiff its estimate of ACV. To reach its total ACV estimate, Defendant summed the estimated replacement costs for the exterior roof, gutters, screens, and patio roof, which amounted to $4,491.80. Defendant then deducted $368.74 for depreciation and $250.00 for the deductible to arrive at the payment amount of $3,873.06. Of the $368.74 deduction for depreciation, $189.74 was depreciated labor costs. Within its ACV calculation, Defendant estimated the replacement cost of Plaintiff's screens to be $729.06. Sometime later, however, Plaintiff repaired her screens for $300.

This is Defendant's second motion for summary judgment. In its first motion Defendant asked the Court to declare that the ACV policy definition—"the amount it costs to repair or replace property with property of like kind and quality less depreciation for physical deterioration and obsolescence"—allows Defendant to depreciate the *entire* estimated cost of repair, including materials and labor, in calculating Plaintiff's ACV payment. The Court found, however, that the phrase "for physical deterioration and obsolescence" limits the type of depreciation that may be factored into an ACV calculation, and as a result, Defendant's calculation of the ACV payment due to Plaintiff, which included a depreciation factor applied to the entire estimated cost of repair including labor, was improper. Defendant now argues and asks the Court to find that even though labor costs should not have been depreciated, Plaintiff suffered no injury because any deficiency in the ACV calculation was offset by the $429.06 overpayment with respect to Plaintiff's screens. Plaintiff counters that the plain contract language requires Defendant to pay full ACV without labor costs depreciated regardless of subsequent events.

## III. Discussion

"The interpretation of an insurance policy is a question of law to be determined by the Court." *Lafollette v. Liberty Mutual Fire Ins. Co.*, 139 F.Supp.3d 1017, 1021 (W.D. Mo. 2015) (citing *Mendota Ins. Co. v. Lawson*, 456 S.W.3d 898, 903 (Mo. Ct. App. 2015)). "Missouri courts read insurance contracts 'as a whole and determine the intent of the parties, giving effect to that intent by enforcing the contract as written.'" *Id.* (citing *Thiemann v. Columbia Pub. Sch. Dist.*, 338 S.W.3d 835, 840 (Mo. Ct. App. 2011)). "'If, giving the language used its plain and ordinary meaning, the intent of the parties is clear and unambiguous, we cannot resort to rules of construction to interpret the contract.'" *Mendota Ins. Co.*, 456 S.W.3d at 903 (citing *Thiemann*, 338 S.W.3d at 840).

"Mere disagreement over the interpretation of the terms of a contract does not create an ambiguity." *Id.* "In examining whether the language used in an insurance policy is ambiguous, the language is normally considered in the light in which it would normally be understood by the **lay person** who bought and paid for the policy." *Id.* (citing *Blumer v. Auto. Club Inter–Ins. Exch.*, 340 S.W.3d 214, 218 (Mo. Ct. App. 2011)). Although the parties disagree over the policy's interpretation, neither party argues that the contract language is ambiguous, and the Court finds it is not. Accordingly, the Court will construe the policy as a whole and enforce the policy as written.

Defendant argues the policy caps Plaintiff's ACV payment at subsequent, actual replacement cost regardless of whether the actual cost is higher or lower than ACV, and as a result Plaintiff was paid more than she was owed under the policy. Defendant directs the Court to three policy provisions it argues caps ACV at subse-

quent, actual repair or replacement cost. The Court finds, however, that the policy provisions on which Defendant relies do not operate as a cap on ACV if the subsequent repair or replacement cost is lower than ACV.

Defendant primarily argues, "The Policy unambiguously caps American Family's obligation to Riggins at 'the amount actually and necessarily spent for repair of the damaged portion' of her home." (Doc. #161, p. 6). The quoted language appears in section (b)(1)(b), quoted in full in the Background section herein, under the heading "Replacement Cost" and not under the heading "Actual Cash Value." ACV is dealt with in section (b)(2). Defendant argues that sections (b)(1) and (b)(2) should be read together, but a plain reading of the provisions shows they are separate because (1) they are separated by a period with no connecting language; and (2) they are each complete sentences. Accordingly, the Court finds that the phrase "the amount actually and necessarily spent for repair of the damaged portion" cannot be read as part of section (b)(2) and does not operate as a cap on ACV.

Defendant also argues that the phrase immediately preceding sections (b)(1) and (b)(2) operates as a cap on ACV. Defendant argues, "[Plaintiff's] interpretation ignores the limiting language, placed in the contract over both '(1) Replacement Cost' and '(2) Actual Cash Value,' that '[b]uildings insured at 100% of replacement cost will be settled at replacement cost.'" (Doc. #177, p. 4). Defendant's quote omits an important clause. The policy language reads in full, "Buildings Insured at 100% of replacement cost will be settled at replacement cost, *subject to the following*: . . ." (Doc. #161–2 p. 20) (emphasis added). What follows are sections (b)(1) and (b)(2). The Court has already found that the sections stand alone. As a result, the language in subsection (b)(2) supersedes the intro-

ductory phrase relied on by Defendants, and subsection (b)(2) does not include any language that caps ACV at whatever amount an insured actually pays to repair or replace after receiving an ACV payment.

Finally, Defendant relies on the ACV definition, *i.e.* "the amount it costs to repair or replace property with property of like kind and quality less depreciation for physical deterioration and obsolescence." (Doc. #161–2, p. 25). This definition cannot be read in isolation but must be read as part of section (b)(2). Substituting the ACV definition in place of the phrase "actual cash value" in section (b)(2), the provision reads, "If at the time of loss, the Increased Building Limit Coverage as provided under the Supplementary Coverages—Section I applies and the building is not repaired or replaced, we will pay [the amount it costs to repair or replace property with property of like kind and quality less depreciation for physical deterioration and obsolescence] *at the time of loss* of the damaged portion of the building up to the limit applying to the building." (Doc. #161–2, pp. 20, 25) (emphasis added). ACV payments according to the policy are tied to estimates of repair or replacement "at the time of loss" less depreciation and less the deductible. The policy does not allow the payment to be lowered if subsequent repair or replacement costs are lower than the ACV payment.

The Court's interpretation of the policy is further supported by the provision regarding "Procedures to Claim Replacement Coverage," which allows insureds to apply for an additional payment if they repair or replace the property for *more than* the ACV payment within one year. Read together these policy provisions provide that an insured's payment is capped at repair or replacement if the subsequent repair or replacement is *higher than* ACV.

Otherwise, the baseline is ACV—the estimated cost of repair or replacement at the time of loss—which is not lowered by subsequent events.

Neither party cited to the Court a Missouri case on point, but while the Court's ruling is specific to the policy language at issue here, it must be noted that other courts have found in similar contexts that subsequent cost to repair or replace does not change an insured's entitlement to full ACV. In *Parkway Assocs., LLC v. Harleysville Mut. Ins. Co.*, 129 Fed.Appx. 955 (6th Cir. 2005), the Sixth Circuit reversed the lower court's decision to deduct contractor overhead and profit from an ACV calculation where the insured intended to use an unlicensed contractor to perform the work, and according to Tennessee statute, unlicensed contractors were only entitled to receive actual expenses and not overhead and profit. The Sixth Circuit held, "What [the insured] actually spends to repair its property does not affect its right to recover the actual cash value of its loss, as the actual cash value is not calculated based upon what the insured ultimately pays to repair its property. Indeed, even if [the insured] chooses not to repair its property at all, it would still be entitled to what it bargained for: the actual cash value of its loss, which includes contractor's overhead and profit where a contractor would reasonably be utilized to make repairs." *Id.* at 962–63; *see also Tritschler v. Allstate Ins. Co.*, 213 Ariz. 505, 144 P.3d 519, 529 (Ariz. Ct. App. 2006) ("The actual cash value is an *estimate* of the needed repairs; the determination of actual cash value is not based upon what the insured actually pays to repair or replace the damaged property. Therefore, the amount an insured ultimately spends to make needed repairs, *if any*, is irrelevant.").

In addition to its contractual arguments, Defendant also argues that public policy considerations require the Court to enter summary judgment in Defendant's favor. Defendant argues:

[Plaintiff] nevertheless argues that the contractual limitation, "amount actually and necessarily spent for repair," has no bearing on ACV. To adopt this interpretation of the policy would incentivize the moral hazard inherent in deriving benefit from an insured loss. As such, it is contrary to well-established Missouri public policy. If ACV is decoupled from actual replacement cost, insureds will be encouraged to elect ACV coverage in hopes of benefitting from mistakenly high repair estimates. That result violates the indemnity principle undergirding all insurance agreements.

(Doc. #177, p. 6). Defendant's argument fails to recognize that this incentive exists by virtue of the policy language itself, which only allows for an adjusted payment to an insured if the subsequent, actual cost to repair or replace is higher than ACV. Defendant states in its reply, "[Plaintiff], like other insureds in her situation, had no incentive to notify [Defendant] of its overpayment because she was able to benefit from the damage to her home." (Doc. #177, p. 7 n.2). Defendant later states in the reply, "[Defendant] makes no claim to recover a penny of this overpayment." (Doc. #177, p. 9 n.4). Defendant makes no claim to recover any "overpayment" because it is not contractually allowed to do so.

As recently stated by Judge Laughrey in response to a similar public-policy argument, "While the Court is sympathetic to Liberty Mutual's arguments regarding the policy justifications supporting the application of a deductible to all claims, the policy considerations cannot overcome clear deficiencies in the language of the Policy at issue." *Lafollette*, 139 F.Supp.3d at 1025–26 (W.D. Mo. 2015). Here, too, the policy language at issue is controlling. Defendant

is required to pay full ACV without depreciating labor costs and regardless of whether the subsequent, actual cost to repair or replace is lower than the ACV payment.

## IV. Conclusion

For the foregoing reasons, it is hereby ordered that Defendant's Motion for Summary (Doc. #160) is DENIED.

**IT IS SO ORDERED.**